UNITED STATES of America,
Plaintiff–Appellee,

v.

Gregory D. WILSON, Defendant–
Appellant.

No. 95–2496.

United States Court of Appeals,
Seventh Circuit.

Argued April 1, 1996.

Decided Oct. 17, 1996.

Richard N. Cox, Office of the United
States Atorney, Urbana Division, Urbana,

IL, Timothy Bass (argued), Office of the United States Attorney, Springfield, IL, for Plaintiff–Appellee.

Jon G. Noll, Jeffrey T. Page (argued), Springfield, IL, for Defendant–Appellant.

Before CUMMINGS, EASTERBROOK and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Illinois security broker Gregory Wilson conducted a Ponzi scheme that defrauded forty-eight victims of more than three million dollars. Representing to investors that their funds were being placed into certificates of deposit, annuities, and mutual funds, Wilson actually deposited the funds into a personal checking account and used them both for personal expenses and to cover interest and dividend payments owed to previous investors. After federal agents uncovered the scheme, Wilson pled guilty to charges of mail fraud and money laundering.

Wilson was then sentenced under the 1994 United States Sentencing Guidelines. The charges of mail fraud and of money laundering each produced an offense level of 23 under Guidelines sections 2F1.1 and 2S1.1 respectively. Because the district court did not group the counts together (U.S.S.G. § 3D1.2), Wilson received a two-level multiple count adjustment under section 3D1.4, so that his adjusted offense level was 25. That level was reduced by three levels for Wilson's timely acceptance of responsibility. With a criminal history category of I, Wilson's sentencing range was 41 to 51 months. The district court sentenced Wilson at the top of that range to 51 months of incarceration. The court also ordered Wilson to pay restitution in the amount of $3,114,334. On appeal, Wilson argues that the court erred in refusing to group the mail fraud and money laundering charges together; he also challenges the order of restitution.[1]

## I.

Guidelines section 3D1.2 deals with the grouping of "closely related counts." It provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group" and then sets out in four subsections the circumstances under which that condition is met:

(a) When counts involve the same victim and the same act or transaction.

(b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

(c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

(d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S.S.G. § 3D1.2. As the underlying facts are not disputed and our task primarily is to interpret the guideline, we review the district court's decision not to group the mail fraud and money laundering counts de novo. *United States v. McDuffy,* 90 F.3d 233, 235 (7th Cir.1996).

The central purpose of this section, as the Eleventh Circuit has pointed out, "is 'to combine offenses involving *closely related* counts'" (*United States v. Mullens,* 65 F.3d 1560, 1564 (11th Cir.1995) (quoting *United States v. Harper,* 972 F.2d 321, 322 (11th Cir.1992) (per curiam)) (emphasis in *Harper*), *cert. denied,* —— U.S. ——, 116 S.Ct. 1337, 134 L.Ed.2d 487 (1996)), and Wilson's convictions for mail fraud and money laundering without question meet that criterion. All of the money that Wilson laundered was money defrauded from his investors, so "[w]ithout

1. Wilson additionally argues that the court lacked jurisdiction over him because he is a "free white male," subject to the laws of the State of Illinois, but not those of the federal government.

As we have previously ruled, this argument is without merit. *United States v. Sloan,* 939 F.2d 499, 500–01 (7th Cir.1991), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 940, 117 L.Ed.2d 110 (1992).

the fraud there would have been no funds to launder." *Mullens*, 65 F.3d at 1564. Moreover, the money laundering took place in an effort to conceal the fraud and keep the entire scheme afloat. For example, Wilson would take money that he received from his investors and purchase cashier's checks to make payments to earlier investors, in classic Ponzi fashion. See Information Count II; Plea Agreement at 3–4; Plea Hearing Tr. 39–40; Presentence Report para. 15. The use of a cashier's check concealed the source of the money (his personal bank account) and helped keep the fraudulent scheme afloat by lulling investors into a false sense of security.[2] (Indeed, the authorities were alerted to the scheme when Wilson made the mistake of paying one of his investors with a personal check. Presentence Report para. 15.) Wilson's commission of mail fraud arose from similar efforts to conceal the scheme: each month he would mail fictitious financial statements to investors purporting to reflect the status of their funds. Plea Agreement at 3–4. In this way, "both the fraud and the money laundering were integral cogs in continuing the scheme." *Mullens*, 65 F.3d at 1564. *Accord United States v. Leonard*, 61 F.3d 1181, 1186 (5th Cir.1995).

■ The mail fraud and money laundering counts therefore should have been grouped. It is noteworthy that subsection (d) of the guideline identifies a number of offenses that either are or are not to be grouped under that particular subsection, and offenses governed by Guidelines sections 2F1.1 and 2S1.1 are among those identified as appropriate for grouping. Grouping may not be automatic for these offenses simply because they are listed (*see Harper*, 972 F.2d at 322), but the two offenses with which we are concerned here also satisfy the standard outlined in

application note 6: "Counts involving offenses to which different offense guidelines apply are grouped together under subsection (d) if the offenses are of the same general type and otherwise meet the criteria for grouping under this subsection." Broadly speaking, they are "of the same general type,"[3] and the offense level for each "is determined largely on the basis of the total amount of harm or loss" as subsection (d) envisions. *See United States v. Adams*, 74 F.3d 1093, 1102 n. 12 (11th Cir.1996) ("Fraud and money laundering convictions ... can be grouped under U.S.S.G. § 3D1.2(d).").

■ We reject the government's contention that these offenses are inappropriate for grouping because they involve different victims and thus different harms. Whether the offenses involve different victims is, as the background commentary notes, "[a] primary consideration" in the grouping decision. There is also a line of authority, on which the district court relied, observing that the victim of mail fraud is the person defrauded, while the victim of money laundering is society at large. *See, e.g., United States v. Kunzman*, 54 F.3d 1522, 1531 (10th Cir.1995) (following *United States v. Johnson*, 971 F.2d 562, 576 (10th Cir.1992)); *United States v. Lombardi*, 5 F.3d 568, 570 (1st Cir.1993). In the abstract, that may be true. Yet, when the defendant is convicted of laundering the proceeds of his fraud in order "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds," as Wilson was here (see § 1956(a)(1)(B)(i)), there is intuitive force to the argument that the victim of the fraud is also a victim of the transaction designed to hide or "cleanse" the funds of which she was defrauded.[4] More to the point, the money laundering in this case served to perpetuate

---

2. Although the information to which Wilson pled guilty charged him only with financial transactions designed "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds" of the fraud (18 U.S.C. § 1956(a)(1)(B)(i)), the indictment that was dismissed upon entry of his plea also charged him with engaging in similar transactions "with the intent to promote the carrying on of" the fraud (sec.1956(a)(1)(A)(i)). *See* Presentence Report para. 3.

3. Note 6 explains that "[t]he 'same general type' of offense is to be construed broadly, and would include, for example, larceny, embezzlement, forgery, and fraud."

4. See the third example identified in application note 4 as appropriate for grouping under subsection (b) of the guideline: "The defendant is convicted of one count of auto theft and one count of altering the vehicle identification number of the car he stole. The counts are to be grouped together."

the very scheme that produced the laundered funds, as we have already explained. The Fifth Circuit found this point dispositive in a similar case:

> [T]he money laundering offense was not "ancillary" here. There was a single, integrated scheme to obtain money from the elderly victims and to use that money to facilitate the continuance of the scam. The activities can not be neatly separated.... By conducting financial transactions—paying callers, purchasing leads, paying phone bills—with the victim's money for the purpose of bilking more people out of $395.50 each, the group of targeted victims became the victim of the money laundering activity as well as the fraud scheme. In this case, the district court properly found that the money laundering and fraud constituted part of the same continuing common criminal endeavor.

*Leonard,* 61 F.3d at 1186 (following *United States v. Cusumano,* 943 F.2d 305, 312–13 (3d Cir.1991) (affirming grouping under subsection (b)), *cert. denied,* 502 U.S. 1036, 112 S.Ct. 881, 116 L.Ed.2d 785 (1992)).[5]

The fraud and money laundering counts therefore should have been grouped as indicated by subsection (d). The two-level increase in Wilson's offense level pursuant to section 3D1.4 was erroneous. We will, accordingly, vacate Wilson's sentence and remand for re-sentencing.

## II.

Wilson also challenges the order of restitution. Although we have vacated Wilson's sentence, we are given no reason to believe that the district court will not order restitution in the same amount when it resentences him, and so we will take up his challenge. Of course, our review of the restitution order is deferential. *E.g., United States v. Lampien,* 89 F.3d 1316, 1323 (7th Cir.1996).[6]

■ Although the district court enjoys broad discretion in requiring the defendant to compensate his victims (*United States v. Viemont,* 91 F.3d 946, 951 (7th Cir.1996)) and full restitution is the norm, (*United States v. Ahmad,* 2 F.3d 245, 247 (7th Cir.1993)), the defendant must have "at least a hope" of complying with the court's restitution order (*United States v. Mahoney,* 859 F.2d 47, 52 (7th Cir.1988)), and we will vacate an order with which the defendant cannot possibly comply (*Lampien,* 89 F.3d at 1323). Wilson contends that this is such an order. In his words:

> To order restitution of more than $3 million for an indigent defendant who has no assets, no income or prospect of income is unrealistic and excessive. There is absolutely no showing that this Defendant has any capability of repaying $3 million of restitution.

Wilson Br. 22.

■ The principal and fatal flaw in Wilson's argument is a failure in proof. It is his burden to show that there is not even some hope of complying with the restitution order; it is not the government's burden or the court's to prove the contrary. *See Viemont,*

---

5. Our research located several other cases in which the district court grouped money laundering and fraud offenses, although in none of these cases did the court of appeals consider the propriety of the grouping. *See United States v. Sokolow,* 91 F.3d 396, 410 (3d Cir.1996); *United States v. Haun,* 90 F.3d 1096, 1102 (6th Cir. 1996); *United States v. Leahy,* 82 F.3d 624, 638 n. 20 (5th Cir.1996); *United States v. Massey,* 48 F.3d 1560, 1568 (10th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 2628, 132 L.Ed.2d 868 (1995). Conversely, in *United States v. Cole,* 988 F.2d 681, 684–85 (7th Cir.1993), the district court did not group the securities fraud and mail fraud offenses together with the money laundering offenses, and because the issue was not raised, we affirmed the sentence without discussing whether the decision not to group these offenses was correct.

6. After we heard oral arguments in this appeal, the President signed into law what is known as the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, 110 Stat. 1214. Title II of that act adds a new provision to the criminal code mandating restitution for all property offenses, "including any offense committed by fraud or deceit." 18 U.S.C.A. § 3663A(c)(1)(A)(ii) (West Supp. July 1996). However, the new provision affects sentencing proceedings only in cases in which the defendant was convicted on or after April 24, 1996, when the act became law. See 18 U.S.C.A. § 2248 note (West Supp. July 1996) Wilson, of course, was convicted and sentenced well in advance of this date, so the provision has no effect on his case.

91 F.3d at 951; *United States v. Murphy*, 28 F.3d 38, 40 (7th Cir.1994). Wilson's current indigence alone does not preclude the order (*Viemont*, 91 F.3d at 951), and he points to nothing in the record demonstrating that his earning capacity makes restitution impossible (*cf. Lampien*, 89 F.3d at 1323–24). If future circumstances bear out Wilson's argument, he of course retains the right to seek modification of the restitution order in the district court. *Viemont*, 91 F.3d at 952. At this juncture, however steep the restitution obligation, and however unlikely it may strike us that he will be able to honor it, Wilson has not presented the type of concrete evidence that would demonstrate he has no hope of being able to comply. Under these circumstances, we have no basis to disturb the court's order.

### III.

Because the fraud and money laundering convictions should have been grouped, and the two-level adjustment in Wilson's offense level pursuant to Guidelines section 3D1.4 was therefore in error, we vacate Wilson's sentence and remand for resentencing. Finding no abuse of discretion in the district court's order that Wilson make restitution in the amount $3,114,334, we affirm that order.

AFFIRMED IN PART, VACATED IN PART, and REMANDED.