*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0333P (6th Cir.)
File Name: 01a0333p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

RANDY GLENN YOUNG,
  *Defendant-Appellant.*

No. 00-1098

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 99-00033—Robert Holmes Bell, Chief District Judge.

Argued: March 14, 2001

Decided and Filed: September 20, 2001

Before: NORRIS and DAUGHTREY, Circuit Judges;
  ZATKOFF, Chief District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Charles E. Chamberlain, Jr., WILLEY &
CHAMBERLAIN, Grand Rapids, Michigan, for Appellant.
Timothy P. VerHey, ASSISTANT UNITED STATES

---

[*]The Honorable Lawrence P. Zatkoff, Chief United States District
Judge for the Eastern District of Michigan, sitting by designation.

1

ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Charles E. Chamberlain, Jr., Julie F. Thelen, WILLEY & CHAMBERLAIN, Grand Rapids, Michigan, for Appellant. Timothy P. VerHey, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

———————

## OPINION

———————

LAWRENCE P. ZATKOFF, Chief District Judge. Randy Glenn Young (hereinafter "Defendant") appeals his sentence pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. Defendant pleaded guilty to two counts of embezzlement in violation of 18 U.S.C. § 666(a)(1)(A) and one count of engaging in a monetary transaction in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957. The sentencing court affirmed the application of a two level enhancement to the offense levels of both the embezzlement counts and the money laundering count because Defendant abused a position of trust. *See* U.S. SENTENCING GUIDELINES MANUAL § 3B1.3. It is Defendant's position on appeal that the district court improperly enhanced the money laundering offense level for abuse of position of trust. Defendant also maintains that enhancing the money laundering offense level by two because he knew the funds at issue were proceeds of a specified unlawful activity, *see* U.S. SENTENCING GUIDELINES MANUAL § 2S1.2(b)(1)(B), and applying a two level enhancement for abuse of position of trust, impermissibly employs the same conduct (embezzlement) as the basis for two separate enhancements to Defendant's sentence.

For the reasons set forth below, we **AFFIRM** the decision of the district court.

applying the abuse of position of trust enhancement to the money laundering offense along with the specific offense characteristic of U.S.S.G. § 2S1.2(b)(1)(B) for Defendant's knowledge that the funds were proceeds of a specified unlawful activity. Therefore, the judgment of the district court is **AFFIRMED**.

Moreover, research indicates that many courts simultaneously, and without incident, enhance offense levels of money laundering violations under 18 U.S.C. § 1957 for a defendant's abuse of a position of trust and his knowledge that the laundered funds were proceeds of fraudulent activity. *See, e.g., United States v. Hawkey*, 148 F.3d 920, 926 (8th Cir. 1998); *United States v. Hardesty*, 55 F. Supp. 2d 1277, 1278 (D. Kan. 1999); *United States v. Bart*, 973 F. Supp. 691, 704 (W.D. Tex. 1997); *United States v. Fluehr*, No. 93-00376-01, 1995 U.S. Dist. LEXIS 1134, at *16-17 (E.D. Pa. Jan. 27, 1995), *cert. denied*, 517 U.S. 1137 (1996).[17]

## IV. CONCLUSION

The district court properly enhanced Defendant's money laundering offense level for abuse of a position of trust pursuant to U.S.S.G. § 3B1.3. Further, the district court also correctly grouped the embezzlement counts with the money laundering count pursuant to U.S.S.G. § 3D1.2(b). Finally, the district court did not impermissibly double count Defendant's embezzlement conduct by using it as relevant conduct in

---

[17]On May 1, 2001, the United States Sentencing Commission submitted to Congress its proposed amendments to the United States Sentencing Guidelines. Unless modified or rejected by Congress, the effective date of these amendments is November 1, 2001. Proposed amendment twenty-two eradicates U.S.S.G. § 2S1.2, the current offense conduct guideline applicable to violations of 18 U.S.C. § 1957, and substantially modifies U.S.S.G. § 2S1.1, the current offense conduct guideline applicable to violations of 18 U.S.C. § 1956. *See* U.S. SENTENCING GUIDELINES MANUAL § 2S1.1 (Proposed Official Draft 2001). Specifically, the proposed amendment re-drafts U.S.S.G. § 2S1.1 to measure the offense level for money laundering counts under 18 U.S.C. § 1956 and § 1957 according to the offense level of the underlying offense from which the laundered funds were derived and includes the money laundering counts as specific offense characteristics thereto. *See id.* If this amendment passes congressional muster, this case and its hair-splitting and hyper-technical analysis would become moot because the money laundering offense under 18 U.S.C. § 1957, and the embezzlement offenses under 18 U.S.C. § 666, would not be calculated separately using different aspects of essentially the same conduct as the basis for enhancing each offense.

## I. BACKGROUND

### A. Offense Conduct

Defendant was employed by the City of Newaygo, Michigan as the city manager from September 1988 to July 1995. Defendant's duties included managing and coordinating the activities of the city departments, supervising department heads, managing all city-owned or operated facilities, developing long range plans, coordinating all planning and zoning activities, and performing operational evaluations. Defendant also had significant responsibility and control over the development and implementation of the City's budget — developing and creating a budget document consisting of numerous funds and subsequently reviewing that document with the budget committee and other governing boards. Further, Defendant was responsible for community and economic development for the City of Newaygo, which included management of special projects such as public utility expansion, infrastructure improvements, and building and other construction projects. During Defendant's tenure as city manager, the City of Newaygo received $7,026,524 in federal grants for seven projects in which Defendant was directly involved.

In the fall of 1991, Defendant created a company styled Michigan Engineering Resources (hereinafter "MER"). On November 22, 1994, Defendant applied for a business registration certificate for another business titled Certco Services (hereinafter "Certco"). Defendant opened a bank account for each business and obtained a post office box for each business in Grand Rapids, Michigan. Defendant's creation and ownership of these two companies was not known by any other city official. It was through these two companies that Defendant perpetrated his fraud on the City of Newaygo.

To obtain money from the City of Newaygo, Defendant created and submitted fraudulent business invoices from MER and Certco to the City for services that were never rendered. The invoices noted associations with non-existent

engineering firms and described various types of professional services that were either unnecessary and never performed or were performed by legitimate businesses that were also paid by the City. Defendant had a penchant for invoicing larger projects because he realized there would be minimum scrutiny by city council.

All invoices were sent through the United States Mail to the city offices of Newaygo, where the city clerk separated the mail and forwarded the invoices to the city treasurer to begin the accounts payable process. The invoices were then forwarded to Defendant for approval, then to the city council for final approval. During Defendant's tenure as city manager, the city council rarely questioned the legitimacy of the invoices; it never questioned invoices for MER and Certco. The City of Newaygo paid MER a total of $1,242,205 during the period from December 1991 through June 1995 for services that were never performed. During the period from December 1994 through August 1995, Certco submitted invoices to the City of Newaygo for which it was paid a total of $620,155. According to records, from November 20, 1991 through August 1, 1995, thirty-seven checks were prepared by the City of Newaygo which were made payable to either MER or Certco.

After the invoices were approved by Defendant and the city council, checks from the City were sent to the post office box Defendant maintained on behalf of MER and Certco in Grand Rapids. Defendant obtained the city checks and deposited them into MER's and Certco's bank accounts. From 1991 to 1995, the checks from the City of Newaygo deposited into the bank accounts of the fraudulent businesses amounted to a total of $1,862,360. After placing the checks into the business accounts, Defendant would withdraw the money from the accounts and either deposit the embezzled proceeds into his personal bank account or spend the money on personal items such as residences, a carpet cleaning business, vehicles, a country club membership, a boat, furniture, and an audio/video system.

because the district court correctly found that Defendant's acts of embezzlement, not his knowledge of those acts, was conduct relevant to the money laundering charge. *See* discussion *supra* Part III.A.3. This distinction is critical. The embezzlement conduct that the district court found relevant to the money laundering offense were the various acts, such as abusing a position of trust, that were part of the embezzlement activity. The specific offense characteristic of U.S.S.G. § 2S1.2(b)(1)(B) requires only knowledge that the laundered funds were proceeds of the embezzlement activity; it does not require that Defendant have actually committed the embezzlement acts himself. "It happens that [Defendant's] knowledge of the [embezzled] funds' source derives from the fact that he committed the [embezzlement], but that does not make the [embezzlement] acts the same thing as knowledge of them." *Lombardi*, 5 F.3d at 571.[16] Therefore, the district court did not impermissibly double count the embezzlement conduct because two distinct aspects of that conduct were factored into Defendant's money laundering offense level: the embezzlement acts and Defendant's knowledge that the laundered proceeds emanated from those acts. *See Farrow*, 198 F.3d at 193 ("[I]mpermissible 'double counting' occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways.").

---

[16]This reasoning underscores the inappropriateness of grouping Defendant's money laundering and embezzlement counts under U.S.S.G. § 3D1.2(c). Subsection (c) groups offenses when one count "embodies *conduct* that is treated as a specific offense characteristic in . . . the guideline" of the other count. *See* U.S. SENTENCING GUIDELINES MANUAL § 3D1.2(c)(emphasis added). Defendant's *knowledge* of the embezzlement activity is a specific offense characteristic of the money laundering offense level. However, Defendant's knowledge of the embezzlement act is a separate and distinct aspect of conduct when compared with the act itself, which forms the basis of the embezzlement count. Therefore, the embezzlement count does not embody conduct that is a specific offense characteristic in the money laundering guideline — grouping the embezzlement and money laundering counts is inappropriate under U.S.S.G. § 3D1.2(c). *See Lombardi*, 5 F.3d at 570-71.

Therefore, the district court properly applied the abuse of position of trust enhancement to the offense levels of both the embezzlement and money laundering counts before grouping.

### 2.    Application of U.S.S.G. § 2S1.2(b)(1)(B) and § 3B1.3

Defendant maintains that using the embezzlement activity as relevant conduct to apply the abuse of trust adjustment to the money laundering offense level, while at the same time applying the enhancement for knowing that the laundered funds were proceeds of the embezzlement activity, raises a double counting issue. In support of this assertion, Defendant states that he would be receiving "a two-level increase for knowing the source of the funds was an unlawful activity, and another two level increase essentially for knowing the source of the funds was an unlawful activity that involved an abuse of trust." However, a plain reading of U.S.S.G. § 2S1.2(b)(1)(B) reveals the policy behind the two-level enhancement and also underscores its difference from the abuse of trust enhancement.

As stated earlier, a money laundering offense under 18 U.S.C. § 1957 is accomplished when a defendant "knowingly engages . . . in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from a specified unlawful activity . . . ." 18 U.S.C. § 1957. A defendant's "*knowledge* that the property is from a specified unlawful activity is not an element of the offense." U.S. SENTENCING GUIDELINES MANUAL § 2S1.2 cmt. background (emphasis added). Therefore, the specific offense characteristic under U.S.S.G. § 2S1.2(b)(1)(B) enhances the sentence of a defendant who possesses such knowledge at the time he launders the funds at issue in the money laundering offense. In violating 18 U.S.C. § 1957, Defendant knew he obtained funds emanating from a violation of 18 U.S.C. § 666(a)(1)(A), which is a specified unlawful activity pursuant to 18 U.S.C. §§ 1957(f)(3), 1956(c)(7)(D). Consequently, the money laundering offense level was enhanced based on such knowledge.

On the other hand, Defendant's money laundering offense level was further enhanced for abuse of position of trust

The current city manager for the City of Newaygo states that as a result of Defendant's embezzlement and money laundering activities, the City of Newaygo has $250,000 in accounts payable which it is unable to pay and was forced to cut $150,000 from its budget for this fiscal year. Further, it is alleged that Defendant's fraudulent conduct will continue to impact the City of Newaygo for several more years.

### B.    Procedural History

On August 11, 1999, a federal grand jury for the Western District of Michigan returned a sixteen-count superseding indictment charging Defendant with committing various federal felony offenses.[1] On October 8, 1999, pursuant to a Rule 11 plea agreement, Defendant pleaded guilty to two counts of embezzlement in violation of 18 U.S.C. § 666(a)(1)(A) and one count of engaging in a monetary transaction in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957.[2] Defendant filed objections to the presentence investigation report (hereinafter "PSR") on January 7, 2000 and filed a sentencing memorandum on January 14, 2000. The district court imposed its sentence on January 21, 2000.

---

[1] The superseding indictment split the first embezzlement count of the initial fifteen-count indictment, returned on March 11, 1999, into two separate counts.

[2] The money laundering count is based on a $50,000 check written by Defendant out of one of the business accounts in order to make a down payment on a new home.

## C.  Sentencing Proceedings

The district court affirmed the PSR,[3] which grouped both embezzlement counts pursuant to United States Sentencing Guideline (hereinafter "U.S.S.G.") § 3D1.2(d).    The applicable sentencing guideline for the embezzlement offenses is U.S.S.G. § 2B1.1, while the applicable guideline for the money laundering offense is U.S.S.G. § 2S1.2.  After grouping the embezzlement offenses, the PSR separately determined the adjusted offense level for each offense by applying the relevant specific offense characteristics and enhancements applicable to each according to the separate offense guidelines pursuant to U.S.S.G. § 1B1.1.  The district court affirmed the application of a two level enhancement of the offense levels for both the embezzlement group and the money laundering count for Defendant's abuse of his position of trust as city manager pursuant to U.S.S.G. § 3B1.3.[4] Defendant's money laundering offense level was further enhanced by two levels pursuant to the specific offense characteristic that Defendant knew the laundered funds were proceeds of the specified unlawful activity of embezzlement. *See* U.S. Sentencing Guidelines Manual § 2S1.2(b)(1)(B).[5]  The embezzlement group and the money

---

[3]The current edition of the United States Sentencing Guidelines Manual was not effective until November 1, 2000.  Because Defendant was sentenced in January 2000, the PSR used the November 1, 1998 edition to calculate Defendant's sentence.  *See* U.S. Sentencing Guidelines Manual § 1B1.11 ("The court shall use the Guidelines Manual in effect on the date the defendant is sentenced.").  The Court notes that the Guideline sections mentioned in this opinion are identical in the 1998 and 2000 editions except when noted.

[4]The Guideline states in pertinent part: "If the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." U. S. Sentencing Guidelines Manual § 3B1.3.

[5]A money laundering offense under 18 U.S.C. § 1957 is accomplished when a defendant "knowingly engages . . . in a monetary transaction in criminally derived property of a value greater than $10,000

---

any appropriate adjustments from Chapter Three; fourth, repeat the first three steps for each count in a multiple count conviction and then apply the grouping guidelines in Chapter Three.    *See*  U.S. Sentencing Guidelines Manual § 1B1.1(a)-(d).

As mentioned earlier, the district court affirmed the entire PSR, which identified the correct offense conduct guidelines for the embezzlement and money laundering counts.  It then separately applied the specific offense characteristics applicable to the offense level under each guideline. Next, and as established in Part III.A of this opinion, the PSR correctly determined that the abuse of trust enhancement lawfully applied to the embezzlement counts as well as the money laundering count.  Finally, the PSR correctly grouped both counts under U.S.S.G. § 3D1.2(b), which then required the PSR to ignore the embezzlement offense level and sentence Defendant in accord with the higher money laundering offense level. *See* U.S. Sentencing Guidelines Manual § 3D1.3(a).

The established rule in the Sixth Circuit is clear that "impermissible 'double counting' occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999) (citing *United States v. Perkins*, 89 F.3d 303, 310 (6th Cir. 1996)).  When grouping occurs under U.S.S.G. § 3D1.2(b), the Guidelines mandate that the sentencing court separately determine the offense level, including enhancements, "for each of the counts in a Group in order to ensure that the highest is correctly identified" before actually sentencing Defendant under the highest count. *See* U.S. Sentencing Guidelines Manual § 3D1.3, cmt. n.2. Because the district court ultimately sentenced Defendant according to the money laundering offense level and ignored the offense level calculated under the embezzlement guideline, including the position of trust enhancement, it did not impermissibly factor that enhancement into Defendant's sentence twice.

an enormous debt that has resulted in severe budget cuts, thereby depriving the municipal coffers of funds that would have otherwise benefitted the City of Newaygo and its citizens. *See* discussion *supra* Part I.A.  In this case, the societal interests of the City of Newaygo have been fiscally harmed by both offenses, and therefore the City of Newaygo is the common victim of both offenses.  This Court declines to follow *Lombardi* to the extent that it is inconsistent with the reasoning adopted in this case.

In sum, the Court finds that Defendant's money laundering and embezzlement offenses were properly grouped pursuant to U.S.S.G. § 3D1.2(b) because both offenses involved the same victim (the City of Newaygo) and several transactions which were connected by a common scheme or plan — defrauding the City of Newaygo in order to embezzle city funds for personal expenditures.

## C.   Double Counting

The district court did not impermissibly double count Defendant's embezzlement conduct by applying the abuse of position of trust enhancement to the embezzlement and money laundering offense levels.  Further, the district court also did not double count the embezzlement activity by using it as relevant conduct to enhance the money laundering offense level for abuse of position of trust while also enhancing the same offense level because of Defendant's knowledge that the laundered funds were proceeds of the embezzlement conduct.

### 1.   Abuse of Position of Trust for Violations of 18 U.S.C. § 666 and § 1957

The Court must follow the clear and unambiguous language of the Sentencing Guidelines when interpreting and applying specific provisions.  *See United States v. Farrow*, 198 F.3d 179, 194 (6th Cir. 1999).  The Guidelines provide explicit and unambiguous application instructions: First, find the appropriate offense conduct guideline in Chapter Two; second, apply any appropriate specific offense characteristics contained in the offense conduct guideline in Chapter Two; third, apply

laundering count were subsequently grouped pursuant to U.S.S.G. § 3D1.2(b) because both offenses involved the same victim (the City of Newaygo) and several transactions which were connected by a common scheme or plan — defrauding the City of Newaygo in order to embezzle city funds for personal expenditures.  Defendant was sentenced in accordance with the higher money laundering adjusted offense level of twenty-four pursuant to U.S.S.G. § 3D1.3(a).[6] The money laundering adjusted offense level was then reduced by three levels because Defendant accepted responsibility for his involvement in the offense and timely notified the Unites States Attorney's Office of his intent to plead guilty. *See* U.S. SENTENCING GUIDELINES §§ 3E1.1(a), (b)(2).  Therefore, Defendant's total offense level was calculated at twenty-one.  Combined with Defendant's criminal history category of I, the Guideline range for the district court was thirty-seven to forty-six months. Defendant was ultimately sentenced to forty-two months imprisonment.

## D.   Dispute

It is Defendant's position on appeal that the district court improperly enhanced the money laundering offense level for abuse of position of trust pursuant to U.S.S.G. § 3B1.3.

---

and is derived from a specified unlawful activity . . . ." 18 U.S.C. § 1957. A defendant's "*knowledge* that the property is from a specified unlawful activity is not an element of the offense." U.S. SENTENCING GUIDELINES MANUAL § 2S1.2 cmt. background (emphasis added).  The specific offense characteristic under U.S.S.G. § 2S1.2(b)(1)(B) enhances the sentence of a defendant who possesses such knowledge at the time he launders the funds at issue in the money laundering offense.  In violating 18 U.S.C. § 1957, Defendant knew he obtained funds emanating from a violation of 18 U.S.C. § 666(a)(1)(A), which is a specified unlawful activity pursuant to 18 U.S.C. §§ 1957(f)(3), 1956(c)(7)(D).

[6]This guideline mandates that the offense level for counts grouped under U.S.S.G. § 3D1.2(a)-(c) shall be the most serious, or highest, offense level of the counts in the group.  *See* U.S. SENTENCING GUIDELINES MANUAL § 3D1.3(a).  Therefore, the PSR used the money laundering adjusted offense level of twenty-four rather than the adjusted offense level of twenty-two for embezzlement.

Defendant argues that while he may have abused his position of trust as city manager to embezzle the funds, *see, e.g., United States v. Brown*, 66 F.3d 124, 129 (6th Cir. 1995) (enhancing a city employee's embezzlement offense level for abuse of a position of trust), he did not utilize that position to facilitate the withdrawal of funds from the MER and Certco accounts which form the basis of the money laundering offense. Moreover, Defendant argues that the position of trust he abused to embezzle the funds is not sufficiently related to his money laundering act to constitute relevant conduct to that act pursuant to U.S.S.G. § 1B1.3(a)(1)(A), conduct that would justify the abuse of trust enhancement if found relevant to the money laundering offense.

Defendant also maintains that enhancing the money laundering count by two levels because he knew the funds were proceeds of a specified unlawful activity, while also applying a two level enhancement for abuse of position of trust, impermissibly uses the same embezzlement conduct as the basis for two separate enhancements to Defendant's sentence. Defendant requests that the Court remand this case to the district court for the limited purpose of re-sentencing Defendant without the position of trust enhancement to the money laundering offense. This would result in a total offense level of nineteen and a corresponding sentencing range of thirty to thirty-seven months. Implicit in an analysis resolving the legal questions raised in this case is a discussion regarding the propriety of grouping the embezzlement and money laundering counts pursuant to U.S.S.G. § 3D1.2(b).

## II.  STANDARD OF REVIEW

The district court's decision to apply U.S.S.G. § 3B1.3 "is treated as a question of law in the Sixth Circuit." *United States v. Brogan*, 238 F.3d 780, 783 (6th Cir. 2001). "'We review de novo the District Court's determination that [[D]efendant] occupied a position of trust for the purposes of the Sentencing Guidelines.'" *Id*. (quoting *United States v. Tribble*, 206 F.3d 634, 635 (6th Cir. 2000)); *see also United States v. Ragland*, 72 F.3d 500, 502 (6th Cir. 1996).

First Circuit refused to group the mail fraud and money laundering counts, focusing its analysis on discrediting the application of U.S.S.G. § 3D1.2(c). *See infra* note 16 and accompanying text. In refusing to group the offenses pursuant to U.S.S.G. § 3D1.2(b), the court merely cited application note 2 of the grouping guideline for the proposition that "the victim of fraud is the insurance company and the victim of money laundering is society." *Lombardi*, 5 F.3d at 570. The court did not provide any further support for its decision not to group the money laundering and fraud counts under subsection (b).

A close reading of the application note to which the *Lombardi* court refers does not endorse the assertion in this case that Defendant's money laundering and embezzlement counts cannot be grouped because "the victim of money laundering is society" whereas the victim of the embezzlement is the City of Newaygo. The relevant application note states in pertinent part:

> For offenses in which there are no identifiable victims (e.g., drug or immigration offenses, where society at large is the victim), the "victim" for purposes of subsections (a) and (b) is the societal interest that is harmed. In such cases, the counts are grouped together when the societal interests that are harmed are closely related.
> . . .
> Ambiguities should be resolved in accordance with the purpose of this section as stated in the lead paragraph, i.e., to identify and group "counts involving substantially the same harm."

U.S. Sentencing Guidelines Manual § 3D1.2, cmt. n.2. When Defendant embezzled the funds from the City of Newaygo, those funds were lost. When Defendant subsequently laundered the embezzled funds by withdrawing the money to pay for personal expenditures, that money became irretrievable to the City of Newaygo. As a direct result of both offenses, the City of Newaygo and its citizens incurred

In *Cusumano*, defendant was convicted of embezzlement and money laundering, among other things, as a result of his involvement in a kickback scheme concerning an employee benefit fund. In deciding to group the offenses under U.S.S.G. § 3D1.2(b), the court noted that the employee benefit fund was the victim of all the offenses and that the "embezzlement . . . and the money laundering were all part of one overall scheme to obtain money from the Fund and to convert it to the use of [defendant]." *Cusumano*, 943 F.2d at 313. Similarly, in this case, the City of Newaygo was the victim of both offenses and the embezzlement and the money laundering were all part of one overall scheme to obtain money from the City and convert it to the personal use of Defendant. *See also Leonard*, 61 F.3d at 1185-86 (grouping fraud and money laundering counts pursuant to U.S.S.G. § 3D1.2(b)).[15]

In *United States v. Lombardi*, 5 F.3d 568 (1st Cir. 1993), defendant was convicted of mail fraud for his conduct in fraudulently securing insurance proceeds by having another man set fire to defendant's property. Defendant was also convicted of money laundering in violation of 18 U.S.C. § 1957 for depositing into a bank account the insurance proceeds stemming from the fraud. The district court applied a two-level enhancement to the money laundering offense level because defendant knew the funds were proceeds of the specified unlawful activity of mail fraud. *See* U.S. SENTENCING GUIDELINES MANUAL § 2S1.2(b)(1)(B). The

---

[15]The Ninth Circuit has been ambivalent on this issue. *Compare United States v. Calozza*, 125 F.3d 687, 693 (9th Cir. 1997) (stating in dicta that "the fraud and money laundering offenses [involved in that case] should have been grouped together."), *with United States v. Syrax*, 235 F.3d 422, 426 (9th Cir. 2000) (refusing to group fraud and money laundering counts because the offenses did not involve the same victims), *cert. denied*, 121 S. Ct. 1639 (2001). The Third Circuit has grouped money laundering under 18 U.S.C. § 1957 with mail fraud pursuant to U.S.S.G. § 3D1.2(c). *See United States v. Sokolow*, 91 F.3d 396, 410 (3d Cir. 1996). However, using that provision to group the money laundering and embezzlement counts in this case would be inappropriate. *See infra* note 16.

## III. ANALYSIS

The Court finds that the district court properly enhanced Defendant's money laundering offense level for abuse of a position of trust pursuant to U.S.S.G. § 3B1.3. Further, the district court also correctly grouped the embezzlement counts with the money laundering count pursuant to U.S.S.G. § 3D1.2(b). Finally, the district court did not impermissibly double count Defendant's embezzlement conduct by using it as relevant conduct to enhance the money laundering offense level for Defendant's abuse of a position of trust while also applying the specific offense characteristic of U.S.S.G. § 2S1.2(b)(1)(B) for Defendant's knowledge that the funds were proceeds of the embezzlement activities.

## A. Abuse of Position of Trust Enhancement

A plain reading of 18 U.S.C. § 1957, the United States Sentencing Guidelines, the accompanying commentary to the Guidelines, and the caselaw interpreting U.S.S.G. § 3B1.3 reveals that the district court did not err when it used Defendant's embezzlement activities as relevant conduct to enhance the money laundering offense level for abuse of position of trust.

### 1. Abuse of Position of Trust Guideline

A defendant's offense level will be enhanced by two levels if he abuses a position of public or private trust "in a manner that significantly facilitated the commission or concealment of the offense . . . ." U.S. SENTENCING GUIDELINES MANUAL § 3B1.3. "For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the

defendant's responsibility for the offense more difficult)." U.S. SENTENCING GUIDELINES MANUAL § 3B1.3, cmt. n.1.[7]

This Court recently reaffirmed the relevant factors in assessing what constitutes a position of trust subject to abuse.[8] *See United States v. Brogan*, 238 F.3d 780 (6th Cir. 2001). A position of trust is marked by substantial managerial discretion and fiduciary-like responsibilities — a position with supervisory authority and one which engenders considerable deference. *See id.* at 783. The defendant in *Brogan* was only a "programmer," a clerical position with no authority or discretion and one that was not unique as many other employees handled money as defendant did. Also, the defendant in *Brogan* was supervised and his supervisors simply failed to detect what should have been an obvious fraudulent transaction. The defendant made no attempts, nor had the authority, to conceal the diversion of company funds to his personal accounts that subjected him to federal prosecution for bank fraud. Therefore, the abuse of position of trust enhancement was inappropriate.

In this case, Defendant did have the power, and in fact did conceal the diversion of municipal funds into the accounts of two shell corporations he created. As city manager,

---

[7] Sentencing courts are directed by statute, *see* 18 U.S.C. § 3553, to follow official commentary, which includes application notes, of the Sentencing Commission in order to, among other things, "interpret the guideline or explain how it is to be applied." U.S. SENTENCING GUIDELINES MANUAL § 1B1.7. Moreover, "[f]ailure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal." *Id.* Of course, the commentary may not be followed if it violates "the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of," the guideline to which it applies. *See Stinson v. United States*, 508 U.S. 36, 38 (1993).

[8] At oral argument, Chief Judge Zatkoff asked both parties their views on how *Brogan* affected the case at bar. However, neither party was familiar with the *Brogan* case as it was only recently decided before oral argument.

calculated and would also result in serious double counting issues. *See infra* Part III.C.1.

A close reading of *Wilson*, combined with other caselaw surrounding this issue, reveals that Defendant's money laundering count was properly grouped with his embezzlement counts pursuant to U.S.S.G. § 3D1.2(b). In *Wilson*, defendant was convicted of mail fraud and money laundering in violation of 18 U.S.C. § 1956 after conducting a Ponzi scheme that defrauded forty-eight victims out of more than three million dollars. The Seventh Circuit grouped the money laundering count and the mail fraud count under U.S.S.G. § 3D1.2(d) because the offense conduct guidelines for both counts, *see* U.S.S.G. §§ 2F1.1, 2S1.1, had offense levels that were "determined largely on the basis of the total amount of [monetary] harm or loss." U.S. SENTENCING GUIDELINES MANUAL § 3D1.2(d).

The Seventh Circuit then proceeded to refute the Government's contention that the two offenses involved different victims and therefore should not have been grouped. In its analysis of this issue, the court justified its decision to group the two offenses by stating that "the money laundering in this case served to perpetuate the very scheme that produced the laundered funds." *Wilson*, 98 F.3d at 283-84. However, grouping under U.S.S.G. § 3D1.2(d) finds no basis on this rationale; this rationale more directly implicates U.S.S.G. § 3D1.2(b), which groups counts involving "the same victim and two or more acts . . . constituting part of a common scheme or plan." Moreover, the court buttresses its decision to group the offenses pursuant to U.S.S.G. § 3D1.2(d) with caselaw that groups money laundering and fraud under U.S.S.G. § 3D1.2(b). *See Wilson*, 98 F.3d at 284 (citing *United States v. Leonard*, 61 F.3d 1181 (5th Cir. 1995) (grouping fraud and money laundering under U.S.S.G. § 3D1.2(b)); *United States v. Cusumano*, 943 F.2d 305 (3d Cir. 1991) (grouping embezzlement and money laundering under U.S.S.G. § 3D1.2(b))).

GUIDELINES MANUAL § 3D1.3(a).[14]   The issue of grouping the embezzlement counts with the money laundering count is also one of first impression in the Sixth Circuit.

The district judge relied on *United States v. Wilson*, 98 F.3d 281 (7th Cir. 1996), for the proposition that fraud-type offenses such as embezzlement should be grouped with the money laundering count. However, the *Wilson* court grouped a money laundering count under 18 U.S.C. § 1956 with a mail fraud count pursuant to U.S.S.G. § 3D1.2(d), whereas Defendant's money laundering count under 18 U.S.C. § 1957 was grouped with his embezzlement counts pursuant to U.S.S.G. § 3D1.2(b).  This difference is important because when grouping is accomplished pursuant to U.S.S.G. § 3D1.2(b), the offense level for each offense in the group, including enhancements, is calculated individually, and then the counts are grouped.  *See* U.S. SENTENCING GUIDELINES MANUAL § 3D1.3, cmt. n.2 ("When counts are grouped pursuant to § 3D1.2(a)-(c) . . . it is necessary to determine the offense level for each of the counts in a Group in order to ensure that the highest is correctly identified.").  That is how the PSR calculated Defendant's sentence in this case.  If counts are grouped under U.S.S.G. § 3D1.2(d), however, adjustments, including the abuse of trust enhancement, are applied "based upon the combined offense behavior taken as a whole."  U.S. SENTENCING GUIDELINES MANUAL § 3D1.3, cmt. n.3.  If the PSR in this case should have used U.S.S.G. § 3D1.2(d), it would affect the offense conduct guideline under which Defendant's sentence should have been

---

[14]The guideline states:

In the case of counts grouped together pursuant to § 3D1.2(a)-(c), the offense level applicable to a Group is the offense level, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three, for the most serious of the counts comprising the Group, i.e., the highest offense level of the counts in the Group.

U.S. SENTENCING GUIDELINES MANUAL § 3D1.3(a).

Defendant had the independent authority to approve invoices ultimately paid by the city council.  The city council could not have known the corporations were fraudulent because Defendant was the only individual entrusted to ensure their validity in his duties as city manager.

Defendant concedes without question that he maintained, and subsequently abused, a position of trust as city manager for the City of Newaygo when he embezzled municipal funds into his fraudulent companies.  *See, e.g., United States v. Brown*, 66 F.3d 124, 129 (6th Cir. 1995) (enhancing a city employee's embezzlement offense level for abuse of position of trust).  The real issue is whether the district court properly used Defendant's embezzlement activities as relevant conduct to enhance the money laundering offense level under 18 U.S.C. § 1957 for abuse of position of trust.  This issue is one of first impression in this Circuit.[9]

---

[9]In an unpublished opinion with facts strikingly similar to the facts of this case, this Court upheld an abuse of trust enhancement to the sentence of a defendant convicted of, among other things, fraud and money laundering in violation of 18 U.S.C. §§ 1956, 1957. *See United States v. Aronds*, No, 98-1990, 2000 U.S. App. LEXIS 4145 (6th Cir. Mar. 14, 2000).  In *Aronds,* defendant defrauded the Kmart corporation by setting up fraudulent shell corporations which he used to launder phony commercial real estate sales commissions that Kmart was deceived into paying through the submission of fraudulent invoices.  Defendant would deposit the Kmart check into the fraudulent corporate account and then launder the money by funneling it through several checks into his personal bank accounts.  Like Defendant in this case, the defendant in *Aronds* held a fiduciary relationship with his victim that enabled him to submit the fraudulent invoices which the victim paid. *See id*. at *42-44.  However, *Aronds* does not settle the issue in this case because the defendant's sentence in that case was calculated using the base offense level of money laundering in violation 18 U.S.C. § 1956. *See also United States v. Smigiel*, Nos. 97-1571, 97-1577, 1999 U.S. App. LEXIS 5974, at *15-16 (6th Cir. Mar. 29, 1999) (upholding an abuse of trust enhancement to a money laundering offense level under 18 U.S.C. § 1956 for pension plan trustees who had embezzled pension fund money and then laundered that money in an effort conceal their conduct).

## 2.    18 U.S.C. § 1957

In order to violate 18 U.S.C. § 1957, a defendant must (1) knowingly engage, or attempt to engage, in a monetary transaction, (2) know that the funds involved in the transaction are criminally derived, (3) use criminally derived funds in excess of $10,000 in the transaction, and (4) use funds "derived from specified unlawful activity." 18 U.S.C. § 1957; *United States v. Griffith*, 17 F.3d 865, 878 (6th Cir. 1994); *see also supra* note 5.   In the case at bar, Defendant engaged in a monetary transaction involving $50,000 in funds derived from Defendant's unlawful activity of embezzling funds from the City of Newaygo.   Defendant embezzled the funds in violation of 18 U.S.C. § 666(a)(1)(A), which is a "specified unlawful activity" pursuant to 18 U.S.C. §§ 1957(f)(3), 1956(c)(7)(D).

Therefore, the Government contends that Defendant's abuse of his position of trust as city manager to embezzle the funds "contributed in some significant way to facilitating the commission . . . of the [money laundering] offense."   U.S. SENTENCING GUIDELINES MANUAL § 3B1.3, cmt. n.1. Put another way, because the funds Defendant processed through the fraudulent bank accounts came to him as a direct result of his ability to manipulate the City of Newaygo's payment process, his abuse of public trust significantly facilitated his ability to obtain the funds he used to violate 18 U.S.C. § 1957.   Thus, the Government maintains that the district court properly enhanced Defendant's money laundering offense level for abuse of position of trust.

In *United States v. Sokolow*, 91 F.3d 396 (3d Cir. 1996), defendant created and controlled a corporation through which defendant received commissions on premiums obtained from the sale of fraudulent insurance policies.   Defendant would defraud small business owners by inducing them to purchase insurance by submitting insurance premiums to his fraudulent insurance corporation.   Once the premiums were deposited with the fraudulent corporation, defendant would simply withdraw the funds for personal use without obtaining

## B.    Grouping Issue

The district court correctly grouped the embezzlement counts with the money laundering count pursuant to U.S.S.G. § 3D1.2(b).

During the sentencing proceeding, the district judge correctly noted that part of the issue in this case is determining the propriety of grouping of the money laundering count with the embezzlement counts.   The PSR grouped the money laundering count with the embezzlement counts pursuant to U.S.S.G. § 3D1.2(b) because both offenses involved the same victim and several transactions which were connected by a common scheme or plan.[13]   Because the counts were grouped under U.S.S.G. § 3D1.2(b), the PSR calculated Defendant's sentence according to the offense level for money laundering because that count had a higher offense level than the embezzlement count.   *See* U.S. SENTENCING

---

[13]The grouping guideline reads in pertinent part:

All counts involving substantially the same harm shall be grouped together into a single Group.   Counts involve substantially the same harm within the meaning of this rule:

(a) When counts involve the same victim and the same act or transaction.

(b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

(c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

(d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S. SENTENCING GUIDELINES MANUAL § 3D1.2(a)-(d).

guideline in this case does not expressly prohibit application of the abuse of trust enhancement. Therefore, not only was it correct for the district court to consider the embezzlement activities as relevant conduct in applying the abuse of trust enhancement to the money laundering offense level, it was required by the United States Sentencing Commission. *See* discussion *supra* Part III.A.3.

The *Wadena* court went on to state that defendant's position as a public official in the tribal council did not "significantly facilitate" the money laundering activities because the payments made to defendant did not come directly from the tribal council. Rather, the funds came from a private contractor directly to defendant. Therefore, defendant's possession of the illegal funds, which formed the basis of the money laundering count, did not flow directly from the abuse of his position of trust. In this case, however, the checks Defendant received, deposited into his business accounts, and spent came directly from the City of Newaygo as a result of Defendant's ability as city manager to falsely represent to the city council that MER and Certco were legitimate businesses that were owed money for work on municipal projects.

A plain reading of 18 U.S.C. § 1957, the United States Sentencing Guidelines, the accompanying commentary to the Guidelines, and the caselaw interpreting U.S.S.G. § 3B1.3 reveals that the district court did not err when it used Defendant's embezzlement activities as relevant conduct to enhance the money laundering offense level for abuse of position of trust.[12]

---

[12]Defendant also cites *United States v. Powers*, 168 F.3d 741 (5th Cir. 1999), in support of his argument. However, *Powers* is inapplicable to the facts of this case because it involves money laundering in violation of 18 U.S.C. § 1956 and a convoluted grouping analysis. *See Powers*, 168 F.3d at 751-52. Therefore, the effect of *Powers* on the issues in this case warrants no further discussion. *See supra* note 9.

insurance for the unwitting victims. The court upheld an abuse of trust enhancement to defendant's money laundering offense level under 18 U.S.C. § 1957.[10] The Third Circuit ruled that defendant had the authority to withdraw the funds from the fraudulent corporate accounts "and that authority was necessary for the commission of the money laundering offenses." *Sokolow*, 91 F.3d at 413. Like the defendant's role as president of the corporation in *Sokolow*, Defendant's role as city manager and "sole proprietor" of the fraudulent businesses in this case "facilitated the commission of the money laundering offenses . . . [as Defendant] was 'free to spend the money as he wished.'" *Id*; *see also United States v. Hawkey*, 148 F.3d 920 (8th Cir. 1998) (applying abuse of trust enhancement to money laundering offense level under 18 U.S.C. § 1957 for county sheriff who used his position to unlawfully withdraw and spend funds belonging to the local sheriff's department).

Defendant avers that this reasoning impermissibly imputes conduct to the money laundering offense level that can only be properly and logically applied to the offense level for embezzlement. Defendant concedes that he violated a position of trust when he deceived the City of Newaygo in order embezzle municipal funds into his fraudulent business accounts and that the district court properly applied the abuse of trust enhancement to that offense level. *See, e.g., United States v. Brown*, 66 F.3d 124, 129 (6th Cir. 1995) (enhancing a city employee's embezzlement offense level for abuse of a position of trust). However, it is Defendant's position that there existed no trust relationship with anyone to violate when he withdrew the funds from the fraudulent bank accounts, the only conduct that formed the basis of his money laundering conviction. Consequently, Defendant maintains that the only way the circumstances surrounding his embezzlement offense

---

[10]The sentencing court in *Sokolow* used the higher offense level for money laundering after it was grouped with defendant's accompanying mail fraud count pursuant to U.S.S.G. § 3D1.2(c). For an analysis regarding the appropriate grouping of the offenses in this case, see discussion *infra* Part III.B.

may properly apply in computing the money laundering offense level is if those circumstances constitute conduct relevant to the money laundering offense.[11] Defendant avers that his abuse of position of trust is simply not sufficiently related to his money laundering acts to constitute relevant conduct as defined in the Sentencing Guidelines.

### 3. Relevant Conduct and Defendant's Abuse of Position of Trust

In order to enhance Defendant's sentence pursuant to U.S.S.G. § 3B1.3, it must be determined that Defendant abused a position of public trust "in a manner that significantly facilitated the commission . . . of the [money laundering] *offense* . . . . " U.S. SENTENCING GUIDELINES MANUAL § 3B1.3 (emphasis added). Unless expressly modified in a particular guideline or policy statement, "'[o]ffense' means the offense of conviction *and all relevant conduct* under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." U.S. SENTENCING GUIDELINES MANUAL § 1B1.1, cmt. n.1 (emphasis added). The introductory commentary to part B of section 3 of the Sentencing Guidelines states that the "determination of a defendant's role in the offense[, including whether a defendant abused a position of trust,] is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), *i.e.,* all conduct included under § 1B1.3(a)(1)-(4), *and not solely on the basis of elements and acts cited in the count of conviction*." U.S. SENTENCING GUIDELINES MANUAL ch. 3, pt. B, introductory cmt. (emphasis added).

The relevant conduct guideline states in pertinent part that an adjustment for abusing a position of trust "shall be determined on the basis of . . . all acts and omissions committed, aided, abetted, counseled, commanded, induced,

---

[11]Indeed, the sentencing judge specifically referenced the relevant conduct provision of U.S.S.G. § 1B1.3(a)(1)(A) in applying the abuse of trust enhancement to Defendant's money laundering offense level.

defendant, a leader of a Minnesota Chippewa Tribe, unlawfully solicited bribes from a contractor whom defendant had awarded the drywall contract on the tribe's casino. The bribes were paid to defendant in the form of checks written on the contractor's business accounts, which defendant deposited into his personal bank accounts. Defendant was convicted of bribery and money laundering in violation of 18 U.S.C. § 1957. In overruling the district court's application of the abuse of trust enhancement to the money laundering offense level, the Eighth Circuit initially noted that the district court refused to group the money laundering counts with the bribery count because the "'money laundering counts . . . were not an integral part of an overall scheme' to perpetuate theft or bribery." *Wadena*, 152 F.3d at 856.

The court then proceeded to explain why the bribery count involving defendant's position of trust could not be used as relevant conduct with respect to the money laundering offense level. After reiterating the district court's finding that the money laundering activity was not related to the bribery, the Eighth Circuit correctly noted that the offense conduct guideline for bribery specifically prohibits an abuse of position of trust enhancement. *See* U.S. SENTENCING GUIDELINES MANUAL § 2C1.2, cmt. n.2 ("Do not apply the adjustment in § 3B1.3 (Abuse of Position or [sic] Trust . . . ."). In other words, had the district court grouped the money laundering and bribery charges together, "the guidelines would have directly prohibited an abuse of trust enhancement . . . ." *Wadena*, 152 F.3d at 856. Therefore, when the district court used the abuse of trust in the bribery conduct as relevant conduct to enhance the money laundering charges, the district court was "indirectly doing what § 2C1.2 of the guidelines directly prohibits." *Id.*

This case is distinguishable from *Wadena* on both scores of analysis. Unlike the district court in *Wadena*, the district court in this case did group the money laundering count with the embezzlement counts because both offenses were sufficiently related. *See* discussion *infra* Part III.B. Further, unlike the bribery guideline in *Wadena*, the embezzlement

The Eleventh Circuit's position on this issue contravenes a plain reading of the Sentencing Guidelines. *See* discussion *supra* Part III.A.3. The United States Sentencing Commission has mandated that sentencing courts look at all relevant conduct, not solely the "elements and acts cited in the count of conviction," when determining whether a defendant has abused a position of trust. *See* U.S. SENTENCING GUIDELINES MANUAL § ch. 3, pt. B, introductory cmt.; *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.1 cmt. 1 (instructing that the word "offense," as used in the Guidelines and in the abuse of trust provision, "means offense of conviction and all relevant conduct under § 1B1.3 . . . ."). Relevant conduct includes all acts that occurred in preparing to commit the offense of conviction. *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.3(a)(1)(A). Because Defendant embezzled the funds in preparing to withdraw them for personal expenditures, the sentencing court was required to include the embezzlement activities in its determination of whether Defendant abused his position of trust in laundering the embezzled funds.

The *Barakat* court further opined that it could not consider the manner in which the income was obtained in determining whether to apply the abuse of trust enhancement because "the law prohibiting tax evasion is neutral as to the method by which the defendant obtained the income . . . . The crime of tax evasion is simply the wilful filing of a return known to be false." *Barakat*, 130 F.3d at 1455. In contrast, 18 U.S.C. § 1957 is not neutral as to the method by which Defendant obtained the funds he laundered. Indeed, § 1957 requires that the funds involved emanate from a "specified unlawful activity," with the embezzlement offenses falling under that statutory definition. The proposition that the embezzlement conduct is sufficiently related to the money laundering conduct is further buttressed by the fact that the two offenses were grouped by the district court. *See* discussion *infra* Part III.B.

Defendant's reliance on *United States v. Wadena*, 152 F.3d 831 (8th Cir. 1998), is also misplaced. In *Wadena*, the

procured, or willfully caused by the defendant; and . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . . ." U.S. SENTENCING GUIDELINES MANUAL § 1B1.3(a)(1)(A). Further, "[c]onduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." U.S. SENTENCING GUIDELINES MANUAL § 1B1.3, cmt. background.

In *United States v. Cianci*, 154 F.3d 106 (3d Cir. 1998), the Third Circuit upheld an abuse of position of trust enhancement to defendant's tax evasion offense level based on the relevant conduct of defendant's underlying embezzlement activities. The court found that defendant's abuse of his position of trust, which enabled him to embezzle the funds he ultimately failed to report, was relevant conduct which may be considered in sentencing defendant on the count of conviction. *See Cianci*, 154 F.3d at 112-13 ("It follows that [defendant's] abuse of his position of trust . . . by conducting the complex transactions that facilitated his uncharged criminal conduct leading to his receipt of the income he failed to report may properly be considered as relevant conduct."); *see also United States v. Duran*, 15 F.3d 131 (9th Cir. 1994) (recognizing that the abuse of trust enhancement may be applied to the offense of conviction on the basis of relevant conduct "other than that involved in the offense of conviction.").

As in *Cianci*, Defendant's underlying embezzlement activity significantly facilitated the withdrawal of funds that formed the basis of his money laundering conviction. In preparing to commit the money laundering offense of withdrawing the municipal funds from his fraudulent business accounts, Defendant embezzled the funds from the City of Newaygo into those business accounts. Therefore, Defendant's embezzlement conduct was necessarily conduct relevant to the money laundering offense. *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.3(a)(1)(A)

(explaining that relevant conduct includes "all acts . . . that occurred . . . in preparation for" the offense of conviction). Because the embezzlement activity was conduct relevant to the money laundering offense, the Guidelines mandate that the embezzlement conduct be used to determine whether Defendant abused his position of trust in withdrawing the embezzled municipal funds. *See* U.S. SENTENCING GUIDELINES MANUAL ch. 3, pt. B, introductory cmt. ("The determination of a defendant's role in the offense[, including whether a defendant abused a position of trust,] is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), *i.e.,* all conduct included under § 1B1.3(a)(1)-(4), and not solely on the basis of elements and acts cited in the count of conviction."). Further, the Guidelines are clear that the sentencing court may consider the embezzlement conduct in addition to the "elements and acts cited in the [money laundering] count of conviction" in applying the abuse of trust enhancement. *See id*. The *Cianci* court's reasoning comports with the plain meaning of U.S.S.G. §§ 1B1.1, 1B1.3, 3B1.3 and accompanying commentary.

Therefore, the Court finds that the district court was correct when it used Defendant's embezzlement activities as relevant conduct to enhance the money laundering offense level for abuse of position of trust.

## 4.   Defendant's Position

Defendant cites authority from other circuits for the proposition that the district court may only look to the elements and acts involved in the money laundering offense, the offense of conviction, not the acts involved in the underlying embezzlement offense, in assessing what conduct is relevant to the money laundering offense in order to apply the position of trust enhancement. Based on this reasoning, Defendant concludes that his abuse of position of trust is simply not sufficiently related to his money laundering acts to constitute relevant conduct which would justify the abuse of trust enhancement. Defendant asserts that to prove money

laundering under 18 U.S.C. § 1957, the Government need only show the fact that the funds were derived from a specified unlawful activity; however, it is not necessary to prove that Defendant knew the funds derived from that activity. *See supra* note 5. Thus, Defendant reasons, the manner in which the funds were originally obtained is not relevant to the money laundering offense — the embezzlement is not relevant conduct that "significantly facilitated the commission" of the money laundering offense. However, a close reading of the cases upon which Defendant relies reveals that they do not support Defendant's position, a position that is inapposite to a plain reading of the Sentencing Guidelines.

Defendant relies on *United States v. Barakat*, 130 F.3d 1448 (11th Cir. 1997), for the proposition that the sentencing court is limited to conduct related to money laundering, the offense of conviction, in deciding whether to apply the abuse of trust enhancement. In *Barakat*, defendant received kickbacks from a mortgage company in exchange for using his position as the head of a county housing authority to refer the mortgage company's services to other housing authorities. Defendant failed to report the income he received from the referrals and was subsequently convicted and sentenced for tax evasion. The district court applied the abuse of trust enhancement  to the tax evasion offense level because defendant used his position at the housing authority to refer business to the mortgage company.

In holding that the abuse of trust enhancement to the tax evasion offense level was improper, the Eleventh Circuit stated that the word "offense," as used in the abuse of trust guideline, "must be read as 'offense of conviction' in order to maintain consistency with the definition of relevant conduct in U.S.S.G. § 1B1.3(a) . . . ." *Barakat*, 130 F.3d at 1455. Therefore, reasoned the court, the abuse of trust enhancement was improper because defendant did not abuse his position in order to commit the crime of tax evasion — any ordinary criminal could commit the crime of tax evasion by simply filing a false return as defendant did.