

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-20-1998

# United States v. Cianci

Precedential or Non-Precedential:

Docket 97-5619

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"United States v. Cianci" (1998). *1998 Decisions.* Paper 199.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/199

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 21, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-5619

UNITED STATES OF AMERICA

v.

ANTHONY CIANCI,
       Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Crim. No. 0312-2: 97-cr-00174)

Argued July 9, 1998

Before: SLOVITER and ROTH, Circuit Judges, and
FULLAM,* District Judge

(Filed August 21, 1998)

Kevin J. McKenna (Argued)
Mark A. Berman
John J. Gibbons, Of Counsel
Gibbons, Del Deo, Dolan, Griffinger
 & Vecchione, P.C.
Newark, New Jersey 07102

 Attorneys for Appellant

_____

* Hon. John P. Fullam, Senior United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

        Faith S. Hochberg
        United States Attorney
        Newark, New Jersey 07102-2535

        George S. Leone (Argued)
        United States Attorney
        Newark, New Jersey 07102-2535

         Attorneys for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Anthony L. Cianci, who pled guilty to two counts of tax evasion, challenges the district court's consideration of uncharged conduct involving the generation of the unreported income in applying a two-level sentencing enhancement for the use of sophisticated means to impede discovery and a two-level enhancement for abuse of a position of trust. Cianci also asserts ineffective assistance of counsel at the sentencing proceeding.

I.

Factual History

On September 9, 1997, Cianci entered a guilty plea to two counts of tax evasion stemming from Cianci's failure to report income he obtained through embezzlement and kickbacks on his 1989 and 1990 tax returns. During this time, Cianci worked for the Panasonic Company, a manufacturer of consumer electronics, as the General Manager for the Northeast group. In 1986, Cianci and his two co-defendants, Mark Ross, also a Panasonic executive, and Mark Manevitz, purchased Drake Brothers, a wholesale and retail distributor of Panasonic products, with Manevitz holding the interest of Cianci and Ross in a secret trust. Manevitz was the owner of record of Drake and ran its day-to-day affairs. Cianci and Ross used Drake to sell goods they embezzled from Panasonic.

2

Cianci obtained some of the income on which he failed to pay taxes by diverting embezzled Panasonic merchandise to Drake by shipping them to Drake under a "bill to/ship to" order by which Panasonic products were billed to one major distributor but shipped by Panasonic to another distributor. To facilitate nondisclosure of the diversion of the merchandise through this mechanism, Cianci eliminated the mailing of monthly statements to its distributors. As part of the scheme, Cianci created a series of false offsets to the accounts of the distributors who had been billed in the form of fictitious advertising invoices, diverted volume rebates, and false mark downs which completely eliminated the cost of the products shipped to Drake from the distributors' accounts.

Once these goods were received by Drake, Manevitz transported them to independent retailers and sold them for cash; the transactions corresponding to the "billed to/shipped to" scheme were not recorded in Drake's books. Cianci received some of the profits and gave some to Ross. Manevitz was paid $1,200 per month for his participation. From approximately January 1989 through approximately December 1990, Cianci received approximately $175,360.81 as his share of the cash generated through the sale of Panasonic merchandise by Drake.

Cianci received yet other money as kickbacks from executives at Odeon Distributors, a distributor of consumer electronic merchandise in New York and a customer of Panasonic, in return for preferential treatment in receiving Panasonic merchandise, which was then in high demand and short supply. Some of these kickbacks were in the form of leases of automobiles used by Cianci at the rate of $14,778.12 per year for the years 1989 and 1990 for a total of $29,556.24. In addition, Cianci received direct payments from Odeon and other Panasonic customers' executives in the form of money orders, which totaled $42,109.45.

Cianci was charged with obtaining and concealing $247,025 in income and evading $77,123 in taxes. In Cianci's plea agreement, he stipulated, inter alia, that his base level offense should be enhanced two levels pursuant to S 2T1.1(b)(2) of the Sentencing Guidelines for the use of sophisticated means to impede discovery of the offense. In

3

its draft of the PSR the probation office rejected the sophisticated means enhancement, and instead recommended a two-point abuse of a position of trust enhancement under S 3B1.3 that had not been mentioned in the plea agreement.

At sentencing, the district court, applying the 1990 Sentencing Guidelines, calculated Cianci's base offense level at 12. See U.S.S.G. S 1B1.11. The court increased Cianci's base offense level by a total of six points: two points for his failing to report income exceeding $10,000 pursuant to U.S.S.G. S 2T1.1(b)(1), two points for his use of sophisticated means to impede discovery of the offense pursuant to S 2T1.1(b)(2), and two points for his abuse of a position of trust pursuant to S 3B1.3. The court rejected the government's S 5K1.1 motion for an additional departure to reflect Cianci's substantial assistance to the government, finding "nothing of a substantial or significant means wherein the Government has profited from the `cooperation' of Mr. Cianci." App. at 61.

Based upon an offense level of 16 and a criminal history category of I, the district court sentenced Cianci to concurrent 22-month terms of imprisonment, which fell at the lower end of the applicable 21-to-27-month range, a total fine of $40,000, a special assessment of $100 and a supervised release term of 3 years on each count, to run concurrently. Cianci appeals.

II.

Discussion

A.

Sophisticated Means Enhancement

Cianci argues that the district court erred in enhancing his offense level by two points pursuant to U.S.S.G. S 2T1.1(b)(2), because it was improperly premised upon its analysis of the embezzlement scheme that generated the income to Cianci rather than the subsequent tax evasion

4

offense to which he pled guilty. The standard of review to be exercised over legal questions about the meaning of the Sentencing Guidelines is plenary. United States v. Rudolph, 137 F.3d 173, 176 (3d Cir. 1998). A clearly erroneous standard should be applied to factual determinations underlying the application of the Guidelines. United States v. Veksler, 62 F.3d 544, 550 (3d Cir. 1995).

Under S 2T1.1(b)(2), a 2-level upward adjustment is warranted "[i]f sophisticated means were used to impede discovery of the nature or extent of the offense." U.S.S.G. S 2T1.1(b)(2). The commentary to S 2T1.1 states that "sophisticated means" includes "conduct that is more complex or demonstrates greater intricacy or planning than a routine tax-evasion case." U.S.S.G. S 2T1.1, Application Note 6. The Background Commentary to S 2T1.1 recognizes that while "tax evasion always involves some planning, unusually sophisticated efforts to conceal the evasion decrease the likelihood of detection and therefore warrant an additional sanction for deterrence purposes." U.S.S.G. S 2T1.1, Background Commentary P 4. Cianci argues that the district court erred in focusing its analysis on the sophistication of Cianci's embezzlement activities, and was instead required to find that he used sophisticated means to hide from the government the income generated from his embezzlement activities.

Cianci's guilty plea agreement contains a stipulation that "[s]ophisticated means were used to impede the discovery of the existence or extent of the offense" and as such "the offense level should be increased to 17." Presentence Investigation Report at 10. The plea agreement contained a statement that "[t]o the extent that the parties do not stipulate, each reserves the right to argue the effect of any fact upon sentence." App. at 13 (emphasis added).

Under the law of this circuit, Cianci cannot renege on his agreement. In United States v. Melendez, 55 F.3d 130 (3d Cir. 1995), we rejected a defendant's attempt to dispute a stipulation regarding the appropriate sentencing range. Similarly, in United States v. Parker, 874 F.2d 174 (3d Cir. 1989), we declined to allow a defendant to argue facts which contradicted those he agreed to in his plea agreement. The agreement encompassed both the number

5

of parcels taken from the mail and their value, and Parker had confirmed in court that was his understanding. Parker could not be heard to contest the value thereafter. We noted that in sentencing Parker the district judge used precisely the valuation he had stated he would use when Parker pleaded guilty, and Parker did not reserve the right to challenge the facts he had confirmed. Id. at 177-78. We stated that under these circumstances, we had "no difficulty in holding [the defendant] to the plea agreement for he seeks the benefits of it without the burdens." Id. at 178.

In this case, before accepting Cianci's guilty plea, the district court summarized the stipulations agreed to by Cianci, including that relating to the use of sophisticated means, and asked Cianci if he knew what he was doing and if anything was left out. See App. at 31-33. Cianci, after conferring with his attorney, raised no objections. As the sophisticated means enhancement Cianci received was exactly what he stipulated to, we here also conclude that the district court was justified in holding Cianci to his stipulation that he used "sophisticated means" to impede the offense.

Even if we were inclined to look beyond Cianci's stipulation, there is adequate support for the district court's finding that Cianci employed sophisticated means to conceal his tax evasion from the IRS. Cianci did much more than merely conceal relatively open transactions. He established an elaborate scheme which involved the use of a shell corporation, falsified documents, and failure to record cash payments. According to the Guidelines, a sophisticated means enhancement would be applicable where the defendant used offshore bank accounts or engaged in transactions through corporate shells. U.S.S.G. S 2T1.1, Application Note 6; see also United States v. Furkin, 119 F.3d 1276, 1285 (7th Cir. 1997) (failing to keep records concerning income and using cash transactions are indicia of sophisticated means).

Admittedly, the methods devised by Cianci impeded discovery by Panasonic of his embezzlement, but they also facilitated concealment of the income derived from the embezzlement and thereby the necessity to report it to the

6

government and pay taxes on it. Moreover, some of the methods used by Cianci were independent of the embezzlement, such as his acceptance of a car leased for him by Odeon and payments in the form of money orders to impede discovery of his kickback income.

Also, as the government points out, had Cianci been motivated only to conceal the embezzlement from Panasonic, there would have been no reason to take the intricate steps to conceal the transactions on Drake's books, as those books were not available to Panasonic. However, they would have been available to the IRS and the absence of full and accurate records facilitated concealment from the government.

For the reasons set forth, we will affirm the district court's application of the sophisticated means enhancement.

B.

Enhancement for Abuse of a Position of Trust

Cianci's other objection to his sentence is to the two-level enhancement imposed by the court upon finding that Cianci "abused a position of trust" under U.S.S.G. S 3B1.3 (1990). Under S 3B1.3, "[i]f the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." U.S.S.G. S 3B1.3. The notes accompanying this section state that "[t]he position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons." U.S.S.G. S 3B1.3, Application Note 1. Cianci argues that the district court improperly premised its conclusion upon facts unrelated to the tax evasion offense to which he pled guilty.

Generally, determining whether the district court employed an erroneous legal theory in finding that a defendant held and abused a position of trust is a legal question subject to de novo review. See United States v.

7

Coyle, 63 F.3d 1239, 1250 (3d Cir. 1995) (citing United States v. Craddoch, 993 F.2d 338, 340 (3d Cir. 1993)). In this case, however, Cianci made no objection to this adjustment at the district court level, so we review the ruling only for plain error. See United States v. Carr, 25 F.3d 1194, 1209 (3d Cir. 1994). To establish plain error, Cianci must show that the district court committed error, that the error was "obvious" and "clear under current law," that the error "affected the outcome of the district court proceedings," United States v. Olano, 507 U.S. 725 (1993), and that it "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings," Johnson v. United States, 117 S.Ct. 1544, 1549 (1997) (quotations omitted).

Cianci must first show that error in fact occurred. See Johnson, 117 S.Ct. at 1549. Cianci does not argue that he could not be found to have abused a position of trust with Panasonic, where he was a high-ranking official, and used the discretion vested in him to generate the income that he failed to report for taxes. Instead he argues that Panasonic was not the victim of tax evasion, which was the offense of conviction, and that he had no trust relationship with the government or Internal Revenue Service. The government responds that Cianci's abuse of his position of trust with Panasonic is relevant conduct which may be considered for this purpose.

This court has not previously decided whether the sentencing court may consider uncharged conduct in applying the abuse of a position of trust enhancement. In United States v. Bhagavan, 116 F.3d 189 (7th Cir. 1997), the Seventh Circuit squarely held that it may. Id. at 193. In Bhagavan, the defendant, president and largest shareholder of a small engineering and surveying firm, was convicted of tax evasion arising from his diversion of a substantial amount of money nominally due the firm into his personal bank accounts and failure to report the money as income on his personal or the firm's tax returns. Id. at 190-91. The court, over one dissent, held that the defendant occupied a position of trust vis-a-vis the minority shareholders, who were victims of the defendant's scheme to enrich himself and avoid paying taxes on the secret income. Affirmance of the enhancement entailed rejection of the notion, inherent

8

in Bhagavan's argument, that the United States can be the only victim of a tax evasion scheme. Id. at 193.

The contrary view was taken in United States v. Barakat, 130 F.3d 1448 (11th Cir. 1997), where the Eleventh Circuit held that an enhancement for the abuse of the position of trust could be justified only if the abuse was connected to the offense of conviction. Id. at 1455. The Barakat court did not give any explanation for its holding that the word "offense" in S 3B1.3, which requires that the defendant's abuse of trust "significantly facilitate the commission or concealment of the offense," must be read as "offense of conviction" in order to maintain consistency with the definition of relevant conduct in S 1B1.3(a). Id. The court ruled that an enhancement was improper because it would "broaden the crime of tax evasion to include the manner in which the income was obtained." Id.

Cianci calls to our attention United States v. Broderson, 67 F.3d 452 (2d Cir. 1995), cited in the dissenting opinion in Bhagavan. Although the court there disallowed the abuse of a position of trust enhancement, the factual situation was far different. Broderson was a vice president of Grumman Data Systems Corporation who negotiated a multi-million dollar contract with NASA for a supercomputer. He ultimately negotiated a lower interest rate on the financing than originally quoted but failed to inform NASA, as required under the applicable statute and regulation. Following his conviction of various counts of fraudulent conduct directed at the United States government, the district court added the two-level enhancement for abuse of a position of trust. The court of appeals reversed, holding that Broderson did not occupy a position of trust vis-a-vis the government. Id. at 455-56.

There was no discussion by the Broderson court nor could there have been about the relevance of any abuse of trust vis-a-vis Broderson's employer because there was no such abuse. Broderson did not profit personally nor did he victimize his employer. Quite the contrary, the opinion makes clear that Broderson acted so that Grumman, which was in financial difficulty, would have the benefit of the extra funds. Id. at 455, 459. In addition, the appellate court

9

noted that the enhancement was inapplicable because it was already included in the base offense. Id. at 455.

In contrast, Cianci's conduct vis-a-vis his employer was characterized by the same type of abuse of a trust relationship that led us to hold such an enhancement fitting in United States v. Lieberman, 971 F.2d 989 (3d Cir. 1992). As we stated in United States v. Hickman, 991 F.2d 1110 (3d Cir. 1993), "[t]o abuse a position of trust, a defendant must, by definition, have taken criminal advantage of a trust relationship between himself and his victim." Id. at 1112. Admittedly, the employer-victim here was not the victim of the offense of conviction, but no language in the applicable sentencing guideline so circumscribes the enhancement.

Consideration of the trust relationship with the victim for purposes of the enhancement is consistent with the treatment of "relevant conduct" in the Guidelines. In our recent decision in United States v. Rudolph, 137 F.3d 173 (3d Cir. 1998), we rejected the defendant's claim that uncharged conduct is not "relevant conduct" under the Guidelines. Id. at 177. Although S 3B1.1 was amended in 1991 to clarify that the "offense" means the offense of conviction and all relevant conduct under S 1B1.3, unless a different meaning is specified or is otherwise clear from the context, relevant conduct was also a relevant consideration under the 1990 Guidelines which governed Cianci's sentence. Section 1B1.2(b) instructed the sentencing judge, "[a]fter determining the appropriate offense guideline section pursuant to subsection (a) of this section, determine the applicable guideline range in accordance with S 1B1.3 (Relevant Conduct)." U.S.S.G. S 1B1.2(b). In further commentary, the Sentencing Commission instructed that "[i]n many instances, it will be appropriate that the court consider the actual conduct of the offender, even when such conduct does not constitute an element of the offense." U.S.S.G. S 1B1.2, Application Note 3. Included among the instances for consideration of relevant conduct is the court's determination of "various adjustments." Id. Indeed, the Background Commentary accompanying the Relevant Conduct section states that "[c]onduct that is not formally charged or is not an element of the offense of

10

conviction may enter into the determination of the applicable Guideline sentencing range." U.S.S.G. S 1B1.3, Background Commentary P 1. Thus, any suggestion by Cianci that relevant conduct could not be considered in adjusting his base offense level is plainly wrong.

The 1990 Guidelines are explicit in authorizing consideration of "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense," when determining whether to apply Chapter Three adjustments. U.S.S.G. S 1B1.3(a)(1). The Application Notes accompanying this section state that conduct "for which the defendant would be otherwise accountable" includes "conduct that the defendant counseled, commanded, induced, procured, or willfully caused." U.S.S.G. S 1B1.3, Application Note 1. It follows that Cianci's abuse of his position of trust with Panasonic by conducting the complex transactions that facilitated his uncharged criminal conduct leading to his receipt of the income he failed to report may properly be considered as relevant conduct.[1]

It would be contrary to the scheme of the Sentencing Guidelines to restrict the concept of "relevant conduct." An article written by the former Chairman and General Counsel of the Sentencing Commission refers to the relevant conduct section as the "cornerstone" of the Guidelines. William W. Wilkins, Jr. & John R. Steer, Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines, 41 S.C. L. Rev. 495, 496 (1990).

_____

1. Cianci argues that our decision in United States v. Pollen, 978 F.2d 78 (3d Cir. 1992), supports his contention that relevant conduct was improperly considered in enhancing his sentence. That case merely reflects the rule that relevant conduct is not properly considered when a particular guideline contains a more explicit instruction, see S 1B1.3, Background Commentary P 2 (1990), and held relevant conduct would not be considered in applying a S 3B1.1(a) enhancement for that reason. See Pollen, 978 F.2d at 88. There is no similar language to preclude the consideration of relevant conduct in S 3B1.3 at issue here.

11

Other commentators have noted that the Guidelines required "the sentencing courts to base the sentence on all conduct relevant to the offense of conviction." Roger W. Haines, Jr., Kevin Cole & Jennifer C. Woll, Federal Sentencing Guidelines Handbook 49 (1991 ed.). In light of the above, we conclude there was no plain error in enhancing Cianci's offense level for abuse of a position of trust.

C.

Ineffective Assistance of Counsel

Finally, Cianci urges this court to vacate his sentence because the representation he received from his trial counsel at sentencing was allegedly ineffective. Specifically, Cianci asserts that his trial counsel was insufficiently familiar with the Sentencing Guidelines as they applied to him.

This court "has long followed the practice of declining to consider a defendant's claim of ineffective assistance of counsel on direct appeal." United States v. Cocivera, 104 F.3d 566, 570 (3d Cir. 1996) (finding the issue more appropriate for collateral attack); see United States v. Gaydos, 108 F.3d 505, 512 n.5 (3d Cir. 1997) (stating preference that ineffective assistance of counsel be raised in collateral proceeding); United States v. Oliva, 46 F.3d 320, 325 (3d Cir. 1995) (declining to address ineffective assistance of counsel claim on direct appeal).

We will therefore dismiss that portion of Cianci's appeal without prejudice to his right to raise the issue on collateral review.

III.

Conclusion

For the reasons set forth, we will affirm the judgment of conviction and sentence.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

13