

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-25-2005

# USA v. King

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4715

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. King" (2005). *2005 Decisions.* Paper 1320.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1320

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No:  03-4715
_____

UNITED STATES OF AMERICA

v.

LORENZO M. KING,

Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(Crim. No. 03-cr-00122)
District Court: Hon. Gustave Diamond, Chief Judge

Argued: September 21, 2004

Before: McKEE, Circuit Judge, and
ROSENN and WEIS, Senior Circuit Judges

(Opinion filed: April 25, 2005)

_____

KAREN S. GERLACH (Argued)
Office of Federal Public Defender
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, PA 15222
Attorney for Appellant

BONNIE R. SCHLUETER

KELLY R. LABBY (Argued)
Office of United States Attorney
700 Grant Street, Suite 400
Pittsburgh, PA 14219

_____

OPINION

_____

PER CURIAM

Lorenzo King appeals the judgment of sentence that was entered following his guilty plea to two counts of federal income tax evasion. He argues that the sentencing judge erred in applying a sophisticated means enhancement under the Sentencing Guidelines, and that the judge improperly refused to consider a sentence of probation. For the reasons that follow, we will remand for resentencing pursuant to the Supreme Court's recent pronouncements in *United States v. Booker,* 125 S. Ct. 738 (2005).

## I. FACTS AND PROCEDURAL HISTORY

During 1996 and 1997, King performed computer consulting services under the company name "K_Systems, Inc." In 1996 and 1997, King earned $80,000 and $96,000, respectively, as a computer consultant. He failed to report that income and was thereafter charged with evasion of federal income taxes in violation of 26 U.S.C. § 7201. Following indictment, King entered a plea agreement in which he stipulated that the tax loss resulting from his evasion was greater than $23,500 but less than $40,000. This yielded a

2

base offense level of twelve under the applicable sentencing guideline. App. 25. The Pre-Sentence Investigation Report (PSR) recommended a two-level enhancement for using sophisticated means to accomplish the offense, and a two-level downward adjustment for acceptance of responsibility. PSR at 6. The resulting adjusted Guideline range was ten to sixteen months with incarceration for at least one-half of the ten-month minimum. U.S.S.G. ch. 5, pts. A, C (1997). Accordingly, the District Court sentenced King to five months of concurrent imprisonment on each count, followed by a three-year term of supervised release. App. 73-4. This appeal followed.[1]

## II. DISCUSSION

After the District Court accepted King's guilty plea and imposed a sentence, the Supreme Court decided *United States v. Booker*. Briefly stated, the Court ruled that any fact not admitted by a defendant or proven beyond a reasonable doubt to the fact finder could not be used to increase a defendant's sentence beyond the maximum sentence that would have otherwise applied. "The Court held that 18 U.S. C. § 3553(b)(1), the provision of the Sentencing Reform Act that makes the Guidelines mandatory, was [unconstitutional] and that it must be severed and excised [from the Guidelines]." *United*

---

[1] We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the meaning and construction of the Sentencing Guidelines, but review underlying factual determinations for clear error only. It should also be noted that United States v. Booker, 125 S. Ct. 738 (2005), has set forth a new standard for appellate review of sentences: "review for unreasonable[ness]." *Id.* at 765 (brackets in original).

*States v. Ordaz*, 398 F.3d 236, 239 (3d Cir. 2005).

Following that decision, King asked to be resentenced pursuant to *Booker* even though he had completed serving his sentence of incarceration and had begun his period of supervised release. Since the District Court viewed the Guidelines as mandatory when it decided upon an appropriate sentencing range, we will vacate King's sentence and remand for resentencing in accordance with *Booker*. On remand, the District Court will exercise its discretion and fashion a sentence based upon all of the sentencing factors it deems relevant to an appropriate sanction for King. However, since the court may wish to consider factors previously incorporated into the Guidelines' sophisticated means enhancement, we must nevertheless resolve King's claim that the court can not consider the means by which he committed his crimes because his conviction for tax evasion already incorporates the sentencing factors that were part of the sophisticated means enhancement.

## A. The Sophisticated Means Enhancement.

In his opening brief, King claims that the sophisticated means enhancement should not be used in determining a sentencing range because it rests on the same conduct that established the substantive offense of felony tax evasion under 26 U.S.C. § 7201. He maintains that the sophisticated means enhancement as applied to income tax evasion applies only to actions that conceal the offense. According to King, conduct that constitutes the offense can not also support a sentencing enhancement. King also claims

4

that the sophisticated means enhancement was improper because his actions were neither "sophisticated" nor "extraordinary" as required under the Guidelines.

## 1. The Affirmative Act Requirement Under 26 U.S.C. § 7201

The felony of tax evasion requires: (1) willfulness; (2) the existence of a tax deficiency; and (3) an affirmative act constituting evasion or attempted evasion of the tax. *Sansone v. United States*, 380 U.S. 343, 351 (1965) (citing *Spies v. United States*, 317 U.S. 492 (1943)). We have previously stated that one affirmative act alone can satisfy the affirmative act requirement. *United States v. McGill*, 964 F.2d 222, 229 (3d Cir. 1992) (citing *United States v. Conley*, 826 F.2d 551 (7th Cir. 1987)). A defendant commits the required overt act when engaging in "any conduct, the likely effect of which would be to mislead or conceal." *Spies*, 317 U.S. at 499. This includes, but is not limited to, using "false invoices or documents . . . concealment of assets or covering sources of income, [and] handling of one's affairs to avoid making the records usual in transactions of the kind." *Id.* However, the affirmative act requirement can also be satisfied by a willful omission. Accordingly, the *failure* to file a tax return can constitute the affirmative act required under § 7201. *United States v. Gricco*, 277 F.3d 339, 350 (3d Cir. 2002).

Here, King fraudulently represented his businesses to be corporations. In one instance, he used a false tax identification number to corroborate the misrepresentation. He also accepted payments in the form of checks made payable to his wife or to fictitious corporations rather than to himself. He had his wife cash checks at check cashing

5

facilities to avoid the formalities and documentation that would result from depositing checks in a bank account. In addition, King discarded tax forms that the IRS issued to his wife, and he willfully failed to file his tax returns or pay income taxes for the tax years 1996 and 1997.

As noted, King insists that the District Court could not rely upon any of these affirmative acts of tax evasion to enhance his sentence for using sophisticated means to accomplish his crime. We can not agree. "An affirmative act [under 26 U.S.C. § 7201] is anything done to mislead the government or conceal funds to avoid payment of an admitted and accurate deficiency. . . . The offense is complete when a single willful act of evasion has occurred." *McGill*, 964 F.2d at 230. Thus, although the failure to report income or pay taxes must be accompanied by another affirmatively evasive act to satisfy the requirements of 26 U.S.C. § 7201, we can not say that King's actions could not satisfy that requirement. *See generally Spies,* 317 U.S. 492 (1943), *and McGill,*964 F.2d at 233 ("Banking under the name of one's spouse satisfies the affirmative act requirement under § 7201.").

### 2. Sophisticated Means under U.S.S.G. § 2T1.1

King further claims that the District Court can only consider acts committed after the fact (to conceal the tax evasion), in deciding whether to enhance his sentence, and that does not extend to earlier conduct that serves only to conceal unreported income. He argues that "[our] application of U.S.S.G. § 2T1.1(b)(2) confirms the indication in the background commentary, that 'sophisticated means' does not refer to acts which *create*

6

the offense.  Instead 'sophisticated means' refers to acts which go above and beyond the offense, and in fact *conceal* an offense which already occurred."  Appellant's Br. at 24 (emphasis in original).  He rests this argument in large part upon *United States v. Gricco*, 277 F3d 339 (3d Cir., 2002), and Application Note 4 to U.S.S.G. § 2T1.1.

King also argues that "[t]he guideline itself provides no guidance on what constitutes 'sophisticated means,' but Application Note 4 fills that gap.  It defines sophisticated means as conduct which is 'especially intricate,' and which constitutes 'concealment of an offense.'" Appellant's Br. at 23-4.  He then quotes examples set forth in the Application Note as follows:

> Sophisticated Means Enhancement.--For purposes of subsection (b)(2), "sophisticated means" means *especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense*. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means.

Appellant's Br. at 24 (quoting U.S.S.G. § 2T1.1, cmt. n. 4 (2003)) (emphasis in original).

However, King's argument is undermined by the very language upon which he relies.  The Application Note states that the enhancement applies to "conduct pertaining to the execution *or* concealment of the offense." *Id.*  This clearly is not limited to conduct which only conceals the offense after its completion as King claims.[2]  Section 2T1.1 of the 1997 Guidelines also contains a two-level enhancement for sophisticated means, and

_____

[2] King is relying upon the 2003 version of the sentencing Guidelines.  The PSR that was prepared for sentencing states without contradiction that King's sentence was controlled by the 1997 Guidelines. PSR at 5.

the following explanation:

> "Sophisticated means," as used in subsection (b)(2), includes conduct that is more complex or demonstrates greater intricacy or planning that a routine tax-evasion case. An enhancement would be applied, for example, where the defendant used offshore bank accounts, or transactions through corporate shells or fictitious entities.

U.S.S.G. § 2T1.1, cmt. n. 4 (1997). There is no distinction between the execution of the offense and the subsequent concealment of it, and King's attempt to forge such a distinction is unconvincing.

King also maintains that his case amounts only to a routine or a "garden variety" tax evasion case and therefore an enhancement for sophisticated means was not appropriate. This argument is not without force. Both the prosecutor and the District Court referred to this case as a "garden variety" tax evasion case at sentencing.[3] However, this rhetorical characterization of King's conduct does not control the sentencing court's view of King's conduct.

The Guidelines provide several examples of conduct that can constitute "sophisticated means." That conduct includes use of offshore bank accounts, corporate shells or fictitious entities. We elaborated upon this in *United States v. Veksler*, 62 F.3d 544 (3d Cir. 1995). In *Veksler*, defendant McNaughton and a co-defendant were involved in a scheme to evade state and federal taxes on the sale of oil that could be used both as home heating oil and diesel fuel. Sales of home heating oil were not taxed, but diesel fuel

---

[3] At sentencing, the Assistant United States Attorney told the court, "I viewed it as a garden variety evasion case," and the court agreed stating, "I think it is a garden variety evasion case." App. 67.

was subject to state and federal taxation.  McNaughton was convicted of using a "daisy chain" scheme consisting of "a series of paper transactions through numerous companies, some of which were largely fictitious" to avoid taxation on the sale of oil. *Veksler*, 62 F.3d at 547.  The transactions involved fictitious companies, including short-lived "burn companies" that were used to disguise the nature of various sales of oil and create the appearance that applicable taxes had been paid. *Id.*  We affirmed the District Court's application of the sophisticated means enhancement relying in part on the fact that "Application note 4 to section 2T1.1 states that 'sophisticated means' . . . enhancement would be applied, for example, where the defendant used . . . transactions through corporate shells or fictitious entities." *Id.* at 550 (second ellipsis in original).

Although we certainly do not suggest that King's offense was nearly as complicated as the daisy chain at issue in *Veksler*, our holding there nevertheless confirms that using corporate shells or fictitious entities to avoid taxes can justify a more severe sentence than would be appropriate otherwise.  King clearly used dummy corporations and fictitious entities to evade paying taxes.

The analysis in *Veksler* therefore supports the enhancement here even though King's scheme does not come close to the sophistication and complexity we addressed in *Veksler*.  To paraphrase the court in *United States v. Furkin*, 119 F.3d 1276, 1284-85 (7th Cir. 1997), "[t]he sophisticated means enhancement in this case was based on [King's] conduct relating to the everyday operation of the business, such as using fictitious names, failing to keep records concerning income, [and] using cash [transactions]."  We cited

9

*Furkin* in *United States v. Cianci*, 154 F.3d 106 (3d Cir. 1998).  In addition, we upheld a sophisticated means enhancement under a new version of the Guidelines in *Gricco*, *supra*. In that case, Gricco argued that the enhancement only applied to the embezzlement scheme he had been convicted of, and not to subsequent efforts to evade taxes on the embezzled money.  We rejected that argument and upheld the enhancement stating: "[the] evidence supports a finding of sophisticated concealment through . . . [the] use of cash to avoid reporting requirements and the use of family members' names to hide assets." *Id.* at 360-61.

We realize that *Gricco* also involved evasion on a much larger scale, but that does not alter our analysis.  The Guidelines do not condition application of the sophisticated means enhancement on the amount of the loss or the size or duration of the scheme. Rather, the amount of the tax loss is addressed separately in  U.S.S.G. § 2T4.1.[4]

### B.  King's Sentence Properly Includes Incarceration.

King also claims that the District Court erred as a matter of law in refusing to consider the entire range of available sentences.  According to King, the judge harbored a personal bias against tax evaders, one that caused the judge to impose a sentence of incarceration due to a personal policy of not considering probation in such cases.  He also maintains that the District Court's bias toward imprisonment tainted its analysis of the

---

[4]  The closest that U.S.S.G. § 2T1.1 comes to such a distinction is its use of the word "unusually" to qualify the term "sophisticated efforts" in the Background portion of the Commentary.  ("Although tax offenses always involve some planning, unusually sophisticated efforts to conceal the offense decrease the likelihood of detection and therefore warrant an additional sanction for deterrence purposes.")  U.S.S.G. § 2T1.1, cmt. background.

sophisticated means enhancement. Absent that enhancement, the guideline range would have allowed for a purely probationary sentence. King claims the court applied the enhancement in order to reach a guideline range that would allow for imprisonment and thus accommodate the court's personal bias in favor of incarcerating tax evaders. That argument is now moot because King has served the custodial portion of his sentence. However, because it raises serious questions about the sentencing process, we will respond to it in the interest of justice.

At the sentencing hearing, the court declared:

I do not believe, as a general rule, probation is appropriate for income tax evaders. . . . I don't believe that I have been giving income tax evaders probation. But if I have, even that's an aberration on my part. I am not going to continue it here today.

App. 60-61. King argues that this and similar statements demonstrate the sentencing judge's strict adherence to a personal policy and that the judge refused to conduct the analysis required under § 3553(a). King's argument is, however, undermined by the following statement of the sentencing judge at the sentencing hearing:

What I consider to be an appropriate sentence in the case, tentatively, is ten months. . . . So, what you ought to be addressing to me is why I shouldn't sentence your client to ten months. . . . [t]hat is where I, tentatively, believe is an appropriate sentence. As I said, if you can convince me somehow that sophisticated means, within the meaning of the application notes of the guidelines, were not employed here . . . if you have something additional that has not been made known to the [c]ourt through the presentence report or other documents, fine.

App. 58-59. We have already explained why a sophisticated means enhancement could

11

properly be applied, and that the resulting sentencing range included a period of incarceration. Nevertheless, the sentencing judge clearly stated that he was open to argument that the enhancement was not proper, and that a probationary sentence would be appropriate instead. The court's statements, taken in context, demonstrate that the judge did not blindly sentence King to a period of incarceration based on a personal bias. Rather, the court stated its "tentative" conclusion regarding the sentence. That conclusion was appropriately "based on the presentence investigation report, the nature of the crime, and the other factors known to the [c]ourt." *Id.* Accordingly, we reject King's argument that the judge ignored the dictates of 18 U.S.C. 3553(a).

## CONCLUSION

For the foregoing reasons, we will vacate the District Court's judgment of sentence and remand the case for resentencing.

McKEE, Circuit Judge, concurring.

I believe that the District Court properly applied the sophisticated means enhancement under the Guidelines. However, I write separately because I am concerned that King may well be correct in arguing that his sentence resulted, at least partially, from the District Court's personal bias against tax offenders and that the court's sentence was driven by that policy rather than the individualized consideration mandated under 18 U.S.C. § 3553(a).

## I

My concern is best illustrated by a brief examination of two cases where we

12

determined that a sentencing judge's personal bias against a category of criminal offenses interfered with the judge's ability to act as an unbiased decision maker.

In *United States v. Townsend*, 478 F.2d 1072 (3d Cir. 1973), the defendant was convicted of willful failure to submit to induction under then-existing draft laws. (50 U.S.C. App. § 462). Townsend appealed, arguing that the trial judge had erred by refusing to recuse himself given his demonstrable bias toward persons charged with violating the selective service laws. Pursuant to 28 U.S.C. § 1441, Townsend filed an affidavit in support of his attempt to have the judge disqualify himself for bias based on statements the judge had made during a pretrial conference. According to the affidavit:

> The judge stated that he sentences all selective service violators to thirty months in prison if they are 'good people.' The judge stated that he felt a duty to pressure conscientious objectors into submitting to induction and that a uniform thirty months sentence was the best way to effectuate that policy.

*Townsend, supra*, at 1073.

In reviewing the court's refusal to recuse, we examined the law pertaining to conscientious objectors and noted Congress's clear intention to not require conscientious objectors to serve in combat as well as congressional instruction that conscientious objectors be ordered to perform civilian work "contributing to the national health, safety, or interest," as opposed to imprisonment. *Id.* at 1074 (citing the Selective Service Act, 50 U.S.C. § 456(j)). In light of that analysis, we concluded that the judge's personal policy of imposing thirty-month sentences in an effort to "[place] pressure on conscientious objectors" to submit to induction, indicated a sufficient "bent of mind" to warrant a

recusal. *Id.*

Similarly, in *United States v. Thompson*, 483 F.2d 527 (3d Cir. 1973), Thompson was convicted of violating the Selective Service Act. He appeared before the same judge who had refused to recuse in *Townsend*. Thompson also submitted an affidavit in support of his request that the judge recuse himself arguing that the judge had a personal policy for handling Selective Service Act cases that precluded presiding over such cases with an unbiased and open mind. The attached affidavit recounted that, during a conversation with the judge in chambers, the judge had "stated that in cases of Selective Service violation, it is his policy to sentence all violators to thirty months in prison if they are good people." *Id.* The judge maintained this policy even though the applicable Selective Service law did not mandate a prison sentence. On appeal, we held that "the personal bias alleged was of such a nature and intensity to prevent the defendant, when convicted, from obtaining a sentence uninfluenced by the court's prejudgment concerning Selective Service violators generally." *Id.* at 528-9. We noted that "a defendant is entitled to trial before a judge who is not biased against him at any point of the trial and, most importantly, at sentencing," and remanded the case for a new trial before a different judge. *Id.* at 529.

Although these cases turn on issues of recusal rather than abuse of discretion or unreasonableness[1] in imposing a sentence, they nevertheless counsel that a sentencing judge must determine what sentence is appropriate based upon an individualized

[1] See Per Curiam majority opinion, note 1.

14

assessment of numerous factors, including those required under § 3553(a), and that a sentence of incarceration that is selected solely because of a sentencing judge's personal bias is an abuse of discretion because it reflects the sentencing court's refusal to exercise its discretion. *See Vinci v. Consolidated Rail Corp.*, 927 F.2d 287, 288 (6th Cir.1991) ("The failure to exercise discretion can constitute an abuse of discretion.").

## II

During King's sentencing hearing, the court explicitly stated: "I do not believe, as a general rule, probation is appropriate for income tax evaders." When defense counsel suggested that many tax evaders do receive probation, the judge replied:

> Then you have, and your clients have, been lucky because *they haven't come before me.* I don't believe that I have been giving income tax evaders probation. But if I have, even that's an aberration on my part. I am not going to continue it here today.

App. 60-1.

(emphasis added). Thereafter, the judge reiterated his disdain for sentencing tax evaders to probation, stating that if his pronouncement regarding tax evaders "gives you any basis for an appeal, then you should take an appeal and let the Third Circuit tell me that's not the way to do it." App. 63. I believe we should accept the District Court's invitation and reiterate the principles established under *Townsend* and *Thompson* that preclude imposing incarcerative sentences pursuant to a personal policy when Congress has authorized a non-incarcerative sentence. Here, the sentencing court explained why he does not believe in imposing sentences that do not include incarceration on persons convicted of tax

15

evasion. He states:

> I believe that income tax evasion, in order to have any kind of
> deterrent effect, must include some kind of incarceration. . . .
> [I]ndividuals who are inclined to attempt to evade and defeat
> income taxes ought to know that even though they are pillars
> of the community, even though they don't have any prior
> record, they don't get a first bite at that apple. I believe that
> it's an important policy matter, an important matter in the
> interest of justice."

App. 66.

My concern is not mitigated by the court's sentencing discretion that is newly recognized in *United States v. Booker*, 125 S. Ct. 738 (2005). *Booker* does not allow a sentencing court to refuse to impose a non-incarcerative sentence that would otherwise be appropriate based solely upon the court's personal view of a category of offenders. Rather, "the Federal Sentencing Act . . . requires a sentencing court to consider Guidelines ranges, *see* 18 U.S.C. § 3553(a)(4) (Supp. 2004) . . . Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." *Booker*, 125 S. Ct. at 757, 766.

I am reluctant to conclude that a personal policy such as may appear on this record can be deemed reasonable if it precludes the appropriate exercise of a sentencing court's discretion.