NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4612
No. 11-4613
_____

UNITED STATES OF AMERICA

v.

PAUL J. LOPAPA,
                        Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-09-cr-00556-001 & D.C. No. 2-10-cr-00814-001)
District Judge:  Honorable Susan D. Wigenton
_____

Submitted Under Third Circuit LAR 34.1(a)
September 27, 2013

Before:  AMBRO, FISHER and HARDIMAN, *Circuit Judges*.

(Filed: September 30, 2013)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Paul LoPapa appeals the District Court's judgments of sentence for his fraud

convictions.  We will affirm.

I

In November 2010, LoPapa pleaded guilty to two separate indictments. The first charged him with six counts of wire fraud and one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 2, 1343, and 1349. The second charged him with one count of social security and disability fraud, in violation of 42 U.S.C. § 408(a)(4) and 18 U.S.C. § 2.

The wire fraud charges arose from an investment fraud scheme perpetrated by LoPapa and two others. In 2007, LoPapa and his coconspirators formed a company called Skyline Equities, Inc. Although Skyline professed to be a holding company with 30 years of investment experience with offices in Zurich, Moscow, and Miami, it was in fact a front company operated out of LoPapa's home in Livingston, New Jersey. Through telephone conversations, written materials, and face-to-face meetings, LoPapa and his coconspirators duped unsuspecting individuals to invest in their "Bank Guarantee Program," which was purportedly guaranteed by international financial institutions such as Credit Suisse and UBS and promised investors extraordinary rates of return. Between December 2007 and July 2008, LoPapa and his coconspirators raised $815,000 from investors in multiple states. The money was transferred via wire to a Skyline bank account at JPMorgan Chase and then quickly rerouted by LoPapa and his coconspirators to various other accounts where the conspirators accessed the money to buy several Mercedes-Benz automobiles, to pay mortgages and property taxes, and to make personal expenditures at various retail stores. Of the $815,000 originally taken, only $50,000 was

2

returned, resulting in a loss of $765,000.

The social security and disability fraud charge arose from LoPapa's scheme to defraud the Social Security Administration (SSA).  In August and September 2001, LoPapa filed various documents with the SSA, claiming that he had sustained an accident in December 1990 which rendered him unable to return to work.  He also alleged that he was unable to manage money due to memory loss and a stroke, and that he was unable to leave his home because of his medical condition.  Based on these representations, in January 2003 the SSA granted LoPapa disability benefits, retroactive to October 1998.  In November 2006, the SSA discovered that LoPapa had in fact been working and determined that his entitlement to benefits was based on a concealment of his work activity.  That determination was upheld by an Administrative Law Judge in September 2007 and benefits were thereafter terminated.  By that time, LoPapa had received $149,923 for the time period between October 1998 and October 2007.

Following LoPapa's guilty plea, the U.S. Probation Office prepared a Presentence Investigation Report (PSR).  The PSR calculated a total offense level of 25 from a base offense level of seven, *see* USSG § 2B1.1(a)(1), a fourteen-level increase for the amount of loss, *see* USSG § 2B1.1(b)(1)(H), a two-level increase because the offense had more than ten victims, *see* USSG § 2B1.1(b)(2)(A)(i), and a two-level increase because LoPapa used sophisticated means, *see* USSG § 2B1.1(b)(10)(C).[1]  Combined with a criminal

---

[1] The two convictions were grouped pursuant to USSG § 3D1.2(d).

history category of VI, LoPapa's advisory United States Sentencing Guidelines range was 110 to 137 months' imprisonment. LoPapa objected to the PSR, arguing that the two-level enhancements for the number of victims and for the use of sophisticated means were unwarranted, that he should be given an acceptance of responsibility reduction, and that his criminal history category should have been II because several of his prior convictions were over 15 years old. Accordingly, LoPapa argued for an advisory Guidelines range of 33 to 41 months' imprisonment. In addition, LoPapa argued for leniency because of medical problems.

The District Court held a sentencing hearing on December 16, 2011. A week prior, LoPapa's counsel, Steven Roth, sent a letter to the Court requesting leave to substitute Moses Rambarran to stand in on Roth's behalf at sentencing because of a death in Roth's family. The letter stated that LoPapa had consented to Rambarran's appearance on his behalf. At the outset of the hearing, however, Rambarran requested that the hearing be postponed because he had not had adequate time to meet with LoPapa. The District Court denied that request, noting that sentencing had already been postponed several times before at LoPapa's request. Nevertheless, the District Court adjourned the hearing for fifty minutes to allow for additional consultation between Rambarran and LoPapa.

When the hearing resumed, the District Court revised the Guidelines calculation to reflect a total offense level of 23 after it determined that the two-level enhancement for

the number of victims was improper, a finding that the Government conceded. Although LoPapa renewed his arguments regarding an acceptance of responsibility reduction, the sophisticated means enhancement, and the criminal history category, the District Court rejected them. The resulting Guidelines range was 92 to 115 months' imprisonment. The Government argued for an upward variance to at least 120 months' imprisonment based on the seriousness of LoPapa's crimes and his long history of fraud convictions. After consideration of the factors enumerated in 18 U.S.C. § 3553(a), the Court determined that an upward variance was appropriate and sentenced LoPapa to concurrent terms of 120 months' imprisonment on the wire fraud conviction and 60 months' imprisonment on the social security fraud conviction, followed by a two-year term of supervised release. The Court also ordered restitution of $630,000 for the wire fraud and $145,923 for the social security fraud.

## II[2]

LoPapa took separate appeals from each sentence, which we consolidated for disposition. He argues: (1) that his investment fraud scheme did not qualify for a sophisticated means enhancement; (2) that he was entitled to an acceptance of responsibility reduction; (3) that the upward variance was unwarranted and his sentence is substantively unreasonable; and (4) that the request to postpone the sentencing hearing

---

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

should have been granted.  We address each argument in turn.

A

LoPapa first argues that the District Court should not have applied a two-level enhancement for the use of sophisticated means pursuant to USSG § 2B1.1(b)(10)(C). We review a district court's decision to apply a sophisticated means enhancement for clear error.  *United States v. Cianci*, 154 F.3d 106, 109 (3d Cir. 1998).

> Application Note 8(B) to § 2B1.1 defines "sophisticated means" as
>
> especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. . . . Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

USSG § 2B1.1 app. n.8(B).  "Application of the adjustment is proper when the conduct shows a greater level of planning or concealment than a typical fraud of its kind."  *United States v. Fumo*, 655 F.3d 288, 315 (3d Cir. 2011) (quoting *United States v. Landwer*, 640 F.3d 769, 771 (7th Cir. 2011)).  For example, we have found the sophisticated means enhancement appropriate in cases where the fraud "involved the use of a shell corporation [and] falsified documents."  *Cianci*, 154 F.3d at 110.  Our sister circuits have similarly found the enhancement appropriate when the fraudster has taken extensive actions to conceal the scheme, *see, e.g.*, *United States v. Snow*, 663 F.3d 1156, 1164 (10th Cir. 2011), or when the fraudster has engaged in the repeated use of fictitious identities and other deceptive practices, *see, e.g.*, *United States v. Crosgrove*, 637 F.3d 646, 667 (6th Cir. 2011).

6

Here, LoPapa used a newly formed corporation, Skyline, to perpetrate the fraud, falsely claiming that the company had thirty years of investment experience and had offices in multiple countries when in fact the company was a front operated out of LoPapa's New Jersey home. LoPapa lured individuals using fabricated investment agreements which promised high rates of return on investments made with international financial institutions, including UBS and Credit Suisse, that would guarantee their investments. LoPapa then deposited funds into multiple Skyline bank accounts at myriad banks from which he promptly redirected funds to his and his coconspirators' personal bank accounts. When investors later became suspicious, LoPapa deployed coconspirators to assume the roles of LoPapa's supposed family members or adopt other fictitious names and tell skeptical victims seeking information about their investments that LoPapa was unavailable because he had supposedly left the business, suffered health problems, or died. He also sent emails falsely assuring investors of forthcoming payments that had been supposedly held up by the banks or blaming losses on fraud committed by others. These facts amply support the District Court's application of the sophisticated means enhancement.

B

LoPapa's second argument is that the District Court erred by denying his request for an acceptance of responsibility reduction pursuant to USSG § 3E1.1. LoPapa argues that his decision to plead guilty to all charges qualified him for the reduction. We review

7

a district court's determination of whether the defendant is entitled to an acceptance of responsibility reduction for clear error. *United States v. Ceccarani*, 98 F.3d 126, 129 (3d Cir. 1996).

Application Note 3 to § 3E1.1 states that although a guilty plea "will constitute significant evidence of acceptance of responsibility . . . this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." USSG § 3E1.1 app. n.3. In addition, the Guidelines make clear that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." *Id.* app. n.5; *see also United States v. King*, 604 F.3d 125, 141 (3d Cir. 2010).

Here, the District Court found that LoPapa's conduct following his guilty plea indicated that he did not truly accept responsibility for what he did and had not shown any contrition or remorse for his crimes. For example, during his formal pre-sentence interview with the Probation Office, LoPapa repeatedly deflected blame for his crimes, telling the probation officer that he pleaded guilty because he did not want anything to happen to his girlfriend and never admitting that the facts to which he pleaded guilty were true. Indeed, LoPapa even asked whether the probation officer "really wanted to know" whether he truthfully admitted his guilt. Instead, he minimized his responsibility for the

8

investment fraud scheme by saying that he "knew about it" and "didn't stop it." With regard to his social security fraud, he told the probation officer that he was "not sure" whether he collected benefits legally or not, continuing to maintain that he was "completely disabled." Given LoPapa's refusal to take full responsibility for his crimes, the District Court did not clearly err in rejecting an acceptance of responsibility reduction. *See, e.g.*, *United States v. Dullum*, 560 F.3d 133, 142 (3d Cir. 2009) (affirming the denial of acceptance of responsibility reduction where the defendant "refused to take full responsibility for his behavior based on his pre-sentencing letter to the Probation Office" and made statements indicating that he did not believe that his actions were fully criminal).

## C

LoPapa next argues that the District Court failed to adequately consider his health problems in sentencing him to 120 months' imprisonment, an upward variance of five months. Although it is unclear whether LoPapa is making a procedural or substantive reasonableness argument, either would be unpersuasive. We review both procedural and substantive challenges for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007).

There is no question that the District Court was aware of LoPapa's medical condition and considered it in its evaluation of the § 3553(a) factors, especially the defendant's history and characteristics. Prior to the sentencing hearing, both the PSR and

9

LoPapa's sentencing memorandum listed his various ailments in painstaking detail and the sentencing memorandum argued at length for a lenient sentence because of them. At the hearing, defense counsel renewed these arguments and read aloud a clinical report that further detailed LoPapa's health problems. Unsurprisingly, therefore, the District Court noted that it was "fully aware" of LoPapa's medical condition. App. 58. The District Court then explicitly referenced LoPapa's medical condition in its consideration of the § 3553(a) factors. It stated, for example, that it was "very clear" that LoPapa's "medical situation does not prohibit you or stop you from engaging in criminal activity," App. 84–85, and that

> you may not be in the best physical health, but you're obviously very mentally capable of creating schemes of falsely representing yourself, creating documents to support whatever profession you've chosen at that particular time . . . or whatever it is you need to be to effectuate your fraud, your mental capacity allows you to do that. And you're very much alert when it comes to basically ridding people of their money.

App. 85. Finally, the District Court observed that it was "confident that the Bureau of Prisons [was] capable of taking care of whatever your medical situation is" and would "provide the necessary care and attention." App. 86–87.

Despite LoPapa's health problems, the District Court found that other factors justified a five-month upward variance. It observed that LoPapa had a long history of fraud schemes, was on probation for another state fraud conviction when he perpetrated his investment and social security fraud, and seemingly had learned nothing from his prior acts. Based on these facts and others, the District Court concluded that an above-

10

Guidelines sentence served the sentencing purposes of providing just punishment for the offense, protecting the public from future crimes, and promoting respect for the law. Once again, the District Court's conclusion is well supported by the record, so we find no abuse of discretion.

D

Finally, LoPapa argues that the District Court should have granted his request to postpone the sentencing hearing. We review a district court's refusal to grant a continuance for abuse of discretion. *United States v. Olfano*, 503 F.3d 240, 245 (3d Cir. 2007). We will "only vacate a sentence based on a refusal to continue a sentencing hearing where the denial was arbitrary and it substantially impaired the defendant's opportunity to receive a fair sentence." *Id.* at 246.

LoPapa has shown neither that the denial was arbitrary nor that it substantially impaired his opportunity to receive a fair sentence. The District Court had already postponed sentencing multiple times at LoPapa's request, and stated that it would not have permitted Rambarran to appear in place of Roth if it had known LoPapa was going to request an additional continuance. Sentencing in the case had been pending for over a year since LoPapa's guilty plea. Under these circumstances, the District Court's denial of a continuance was not arbitrary. *See, e.g.*, *United States v. Midgett*, 488 F.3d 288, 301 (4th Cir. 2007). Furthermore, LoPapa has not identified any additional evidence or arguments that he would have presented at a later sentencing hearing, and thus has not

11

shown that that the denial substantially impaired his opportunity to receive a fair sentence. *See, e.g.*, *Olfano*, 503 F.3d at 246.

III

For the foregoing reasons, we will affirm the judgments of the District Court.